[908 NYS2d 623]

In the Matter of KAREN JAFFE (Admitted as KAREN JAFFE-NIERENBERG), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 28, 2010

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Stephen P. McGoldrick* of counsel), for petitioner.

*Linda F. Fedrizzi*, for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Karen Jaffe was admitted to the practice of law in the State of New York by the Fourth Judicial Department on June 24, 1982 under the name Karen Jaffe-Nierenberg. At all times relevant to this proceeding, she has maintained an office for the practice of law within this Department.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.3, imposing reciprocal discipline on respondent, predicated on an order of the United States Court of Appeals for the Second Circuit (585 F3d 118 [2009]) publicly reprimanding and removing her (disbarring her), or in the alternative sanctioning her as this Court deems appropriate. Respondent seeks dismissal of the petition, or in the alternative a hearing on liability, or at least on sanctions.

This is the second time that respondent has been the subject of reciprocal disciplinary proceedings before this Court. The first proceeding followed the Second Circuit's suspension of respondent in May 2006 for 30 days for having falsely advised the Court, on two occasions, that she was too ill to attend oral arguments, when in fact she was attending hearings in another court. Based on that order, the Board of Immigration Appeals suspended her for 30 days from practice before that court, the Immigration Courts, and the Department of Homeland Security, and this Court publicly censured her (40 AD3d 96 [2007]).

During respondent's federal suspension, the Second Circuit, in an effort to assist her in planning to manage her caseload of pending matters, assigned the former chair of the immigration law committee of the New York City Bar Association to help her. Second Circuit staff also met with her. Nevertheless, in what the Second Circuit termed a "remedial order," dated July 13, 2006, the court relieved respondent from all cases before that court in which she had not yet submitted a brief, and limited her to no more than 30 cases at any one time, due to her "chronic failure to meet briefing deadlines, often despite numerous extensions, and her frequent submission of briefs that do not conform to the Rules of Appellate Procedure and that are of minimal competence." That order also directed respondent to provide the names and addresses of clients in cases identified by the court, so that they could be notified respondent was no longer representing them.

In December 2006, the Second Circuit referred for a hearing the issue of the suspicious filing of briefs in three cases on which respondent had been relieved as counsel. A special master determined that two other people were responsible for the fraudulent briefs, but not respondent. The Second Circuit accepted that conclusion in an August 2007 order.

By order dated April 2, 2008, the Second Circuit referred respondent to its Committee on Admissions and Grievances (CAG) to investigate and report on whether she should be subject to disciplinary measures. The order was based on: (1) the dismissal of 12 of her appeals for failure to comply with briefing schedules; (2) orders in 14 of her appeals warning that continued failure to comply with the Federal Rules of Appellate Procedure could result in sanctions; (3) her continued submission of deficient briefs in two appeals, despite repeated warnings, and her failure to attempt to file revised briefs; and (4) her failure to timely respond to Court orders pertaining to the previous "remedial order."

After conducting a hearing at which respondent and her counsel appeared, and accepting all of her submissions, the CAG, in a December 2008 report, found her guilty by clear and convincing evidence of misconduct and recommended disbarment if she failed to resign within 60 days.

Respondent conceded that the 12 dismissed appeals identified in the order of referral had been dismissed due to her failure to comply with court briefing schedules, which constituted neglect and conduct prejudicial to the administration of justice. With respect to the quality of her work, the CAG reviewed her submissions in three matters and found them "to be of very poor quality." Specifically:

> "Facts are asserted without citations to the record. The argument section is paltry. The petition is sloppily presented, replete with typographical errors. The table of authorities for each of the three different cases is the same, all containing the same errors . . . , and none matches the presentation of cases in the petition. In one petition, none of the cases listed in the table appear in the petition; in another, fewer than half the cases and decisions listed appear in the petition."

As an excuse, respondent maintained that law students had written many of the briefs she signed and filed, without reading them.

The CAG further determined that respondent had not offered an adequate excuse for her failure, despite numerous extensions, to fully comply with court directives to provide information for the purpose of notifying clients that she had been relieved from representation by the July 2006 "remedial order." The CAG also made a finding that respondent had made false statements to the court (the subject of the prior disciplinary proceeding), and treated her prior sanction (suspension of 30 days) as a mitigating factor. The CAG expressed its concern that respondent:

> "did not take heed of the Court's warnings concerning her deficient briefs. Nor did she attempt to file corrected briefs even after acknowledging that many of the briefs she filed were drafted by law students without her supervision. [Respondent] did not seek permission to file briefs out of time on behalf of the clients whose cases were dismissed because of defaults on the scheduling orders. While she could not keep up with the cases she had on her docket, she continued to take on new matters."

Aggravating factors identified by the CAG were: "(1) the prior disciplinary offenses; (2) a pattern of misconduct involving noncompliance with the Court's briefing schedules, orders, and defective briefing; (3) the multiple offenses; (4) the vulnerability of [respondent's] immigrant clients, many of whom do not speak English; and (5) [respondent's] substantial experience in the practice of law." Mitigating factors were respondent's remorse and cooperation in the proceedings, as well as "personal problems with her own illness and a family member's illness around the time of the March 22, 2007 order," issued upon her failure to provide all the information requested in the July 2006 "remedial order."

In light of respondent's pattern of neglect, repeated failure to follow court orders, the aggravating and mitigating factors, and her assertion that she no longer wished to practice before the Second Circuit, the CAG recommended that she be given the opportunity to resign from the Second Circuit bar, along with a public reprimand; however, if she failed to withdraw, then the CAG recommended disbarment.

By order dated October 19, 2009, the Second Circuit adopted the factual findings of misconduct and the aggravating and mitigating circumstances, but declined to permit a resignation, and ordered respondent publicly reprimanded and removed (disbarred) (585 F3d 118 [2009]).

The Court acknowledged that "most of [respondent's] briefs were filed within a limited period of time," but noted that

> "she did not request leave to file amended briefs after being put on notice, and, after being advised of her briefing deficiencies as early as December 1, 2005 . . . , she filed at least three deficient briefs after that date . . . . Furthermore, her related argument that her briefs were not deficient . . . renders doubtful the suggestion that she might have improved her briefing in later cases had she been given earlier notice of the deficiencies." (*Id.* at 123.)

With respect to a brief respondent proffered in support of her argument that her work was not deficient, the court observed: "Fully half of the Statement of the Case is irrelevant since its last three paragraphs are duplicated verbatim from an entirely different case concerning a different petitioner and different facts." (*Id.*)

The Second Circuit also rejected respondent's argument that she had already been disciplined for the same conduct and therefore new sanctions were precluded by res judicata or double jeopardy. First, the court noted, she had never been disciplined for some of the conduct, such as filing briefs written by law students without reviewing them. Even though respondent had been criticized for deficient performance in orders issued during the course of particular cases, those orders, the court observed, "did not suggest that the criticism (or other adverse action) was a final 'sanction' for that misconduct." (*Id.* at 121.) The court also stated that, "even if an attorney already has received . . . a final sanction for each of several instances of misconduct, we may nonetheless impose further discipline if the individual instances of misconduct are found to be part of a sanctionable pattern that has not itself been addressed." (*Id.*) The court specifically stated that it was not disciplining respondent again for discrete misconduct for which she had already been sanctioned. The court further stated, "even if the previously sanctioned misconduct were ignored entirely, or treated as aberrational, [it] would nonetheless find that [disbarment was] warranted by the remaining misconduct." (*Id.* at 122.)

Finally, the court:

> "ma[d]e it clear that the deficiencies of [respondent's] conduct, in the aggregate, bespeak of something far more serious than a lack of competence or

ability. They exhibit an indifference to the rights and legal well-being of her clients, and to her professional obligations, including the obligation of candor, to this Court." (*Id.* at 123.)

In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 603.3 (c), an attorney is precluded from raising any defenses except: (1) a lack of notice or opportunity to be heard constituting a deprivation of due process; (2) an infirmity of the proof presented to the foreign jurisdiction; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state.

Here, respondent, represented by counsel, actively participated in the Second Circuit disciplinary proceedings, and thus there was no deprivation of due process. Both the CAG and the Second Circuit cited to specific New York disciplinary rules, thereby satisfying the third prong of the test. Indeed, respondent concedes the sufficiency of the proof, with the exception of the charge relating to her failure to comply with court directives, which she claims was an unintentional consequence of her involvement in a car accident and her responsibilities in connection with her ailing father. However, she was not found guilty of willfully disobeying a court order, but only neglect, based on her own admission that the matter slipped her mind, and her injuries and father's illness were acknowledged as mitigating circumstances. In any event, that charge was not the most serious one, and respondent's principal argument is that the Second Circuit had previously disciplined her for all of the same misconduct, and she should not be sanctioned twice.

As to this argument, we note that the Second Circuit observed that the issue of respondent's submission of law student briefs without reading them had never been addressed in any prior disciplinary order. Indeed, rather than stating that respondent's disciplinary record of a prior suspension for making false statements to the court was an aggravating factor, the Second Circuit found her guilty of making the false statements, but credited her with a mitigating circumstance for the sanctions previously imposed for those statements. Notwithstanding this, the Second Circuit expressly declared that it was not disciplining respondent "again . . . for that discrete misconduct" (585 F3d at 122).

The balance of respondent's misconduct as found in the order at issue, dismissal of 12 appeals for failure to comply with briefing schedules and the filing of at least 16 grossly inadequate briefs, does appear to have been considered in the Second

Circuit's July 2006 order. The Court referred to that order as "remedial," rather than disciplinary. The order was not the result of a formal disciplinary proceeding, and apparently respondent was not given an opportunity to contest the findings therein. The conditions imposed by that order were certainly intended as remedial, and not a sanction. However, the only pertinent factor is that *this* Court has never previously sanctioned respondent for the misconduct outlined in the instant petition. Accordingly, the Second Circuit's October 2009 order, considered alone or in conjunction with the July 2006 "remedial order," provides a predicate for reciprocal discipline.

Insofar as respondent asserts that the Second Circuit punished her because it "was disappointed Judge Keenan could not implicate [her] in any wrongdoing" with respect to the unproven allegation that respondent filed fraudulent briefs, the court specifically stated that her "cooperation and affirmative efforts to expose fraudulent conduct [by the two attorneys who were responsible] were commendable, and are considered mitigating factors" (585 F3d at 122).

As a general rule, this Court accords significant weight to the discipline imposed by the jurisdiction where the charges were originally brought, even if greater or lesser sanctions have been imposed in New York for similar conduct (*Matter of Jarblum*, 51 AD3d 68, 71 [2008]). This Court departs from that principle only with "reluctance" (*Matter of Lowell*, 14 AD3d 41, 48 [2004], lv denied 5 NY3d 708 [2005]), primarily where the sanction in the originating jurisdiction deviates materially from this Court's precedent (*Matter of Whitehead*, 37 AD3d 86 [2006]).

This Court has previously held that, where an attorney has "engaged in a pattern of neglect of client matters and failed to comply with court orders, disbarment is warranted" (*Matter of Hatton*, 44 AD3d 49, 52 [2007] [reciprocal disbarment based on Southern District of New York disbarment]). Here, respondent neglected numerous client matters, and failed to even attempt to address her deficiencies, despite warnings and opportunities to do so. At least as late as the most recent Second Circuit disciplinary proceeding, respondent even maintained that her work was competent. She has not evinced any insight into the impropriety, and resultant harm, of submitting law student work product without review, and even tries to invoke that misconduct as a mitigating factor. The pervasiveness of respondent's neglect is compounded by the vulnerability of her immigrant clients. Her prior disciplinary history (of making

false statements) and her accusations of base motives by the Second Circuit are further aggravating circumstances. Because the sanction of disbarment imposed by the Court of Appeals for the Second Circuit is in accord with this Court's precedents involving similar misconduct, we adopt that sanction.

Accordingly, the Committee's petition should be granted, respondent's request for a hearing should be denied, and respondent should be disbarred and her name stricken from the roll of attorneys and counselors-at-law in the State of New York.

MAZZARELLI, J.P., ANDRIAS, NARDELLI, CATTERSON and McGUIRE, JJ., concur.

Respondent disbarred, and her name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.