OPINION OF THE COURT
Per Curiam.
Respondent Roy Kulcsar was admitted to the practice of law in the State of New York by the First Judicial Department on November 12, 1968 under the name Roy Raymond John Kulcsar. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within this Department.
The Departmental Disciplinary Committee (DDC) now seeks an order, pursuant to 22 NYCRR 603.3, imposing reciprocal discipline on respondent, predicated on two orders: one dated February 15, 2011 issued by the United States Court of Appeals for the Second Circuit both suspending respondent for six months and publicly censuring him; and the other dated March 24, 2011 issued by the United States District Court for the Southern District of New York suspending respondent for two years.
In May 2007, the Second Circuit issued an order referring respondent to its Committee on Admissions and Grievances (CAG) based on the dismissal of four criminal appeals for default in which he was counsel of record; his defaults in meeting the briefing schedule in three other criminal matters; his repeated motions for extensions of time to file briefs; and repeated instances of his being uncommunicative with court staff.
After conducting a hearing at which respondent and his counsel appeared, and accepting all of his submissions, the CAG, in a March 31, 2010 report, found respondent guilty by clear and convincing evidence of misconduct, which was aggravated by the fact that he established a pattern of behavior. The report further noted that, despite his having been aware of communication problems related to his office for a period of years, it did not appear that respondent had implemented significant changes. In mitigation, the CAG noted that respondent had a demanding practice, his personal life presented significant challenges, and he had no prior disciplinary history. In addition to recommending public censure, the CAG recommended that respondent meet certain reporting requirements.
*163 On February 15, 2011, the Second Circuit issued an order in which it, inter alia, confirmed the CAG’s factual findings and recommendation of censure, but also ordered that respondent be suspended from practice before that court for six months and, thereafter, barred for an additional one-year period from representing litigants before the Second Circuit pursuant to the Criminal Justice Act. The Second Circuit concluded that a more severe sanction than public censure was warranted because, while the proceeding was pending, respondent had been suspended on an interim basis by the Southern District, for reasons discussed below, and because he had continued to neglect appeals. The Second Circuit’s order also imposed the reporting requirements recommended by the CAG and directed respondent to fulfill certain continuing legal education requirements in the area of law office management.
While the disciplinary proceeding was pending in the Second Circuit, an investigator appointed by the Southern District’s Committee on Grievances (COG) was investigating allegations that respondent had been improperly soliciting inmates at certain detention facilities who were already represented by counsel, and improperly paying inmates for client referrals. The referral payments were allegedly made by respondent or his employees by making deposits into inmates’ commissary accounts. Between August 2004 and February 2010, respondent allegedly made 139 deposits to 36 inmates totaling $17,905.
In July 2009, respondent admitted in a deposition that, inter alia, he did not maintain any escrow accounts for the handling of client funds in connection with his law practice. Rather, respondent used his personal checking account to handle both personal and client funds. Based on that testimony, the Southern District issued an order to show cause directing respondent to account for his apparent failures to segregate his personal funds from client funds and to maintain detailed records of transactions involving client funds. In April 2010, respondent submitted a response in which, according to the court, he failed to demonstrate compliance with Code of Professional Responsibility DR 9-102’s (22 NYCRR 1200.46) segregation and record keeping requirements.
In May 2010, the COG investigator served respondent with notices that required respondent to produce, among other things, specified account records for all checking accounts used in connection with his law practice and to appear for further depositions. Twice respondent was granted requests for adjournments of the submission and deposition dates.
*164 Despite the two adjournments, respondent failed to produce the specified documents or to appear for his continued deposition (nor did he request an additional adjournment). In August 2010, the Southern District issued an order to show cause directing respondent to demonstrate why it should not take disciplinary action against him based on his failure to cooperate with the COG’s investigation. In September 2010, respondent submitted his response in which he claimed that he had been making efforts to comply with the COG’s production requests and apologized for the “inconvenience caused by [his] inaction.” Respondent requested that the court take into account his “overwhelming” personal problems. By order dated September 24, 2010, the Southern District suspended respondent on an interim suspension based on his failure to produce documents and otherwise cooperate with the COG’s investigation.
In December 2010, respondent appeared for his continued deposition with counsel. During the deposition respondent testified that from 2003 to 2010, he did not maintain any detailed records for the personal checking account out of which he made deposits into inmates’ commissary accounts. Respondent also testified that his bank statements for the account had been destroyed as a result of flooding in his basement in 2005 and 2007. The investigator questioned respondent in detail as to the deposits he made into the commissary accounts (which were for clients and nonclients). Respondent testified that he could not remember the details of many of the deposits, and, in some instances, he was simply making gifts of financial assistance.
Thereafter the Southern District directed respondent to demonstrate why it should not take disciplinary action against him based on admissions made during his deposition. Respondent submitted a response claiming that his bookkeeping failures were the result of a tumultuous personal life that included: a difficult divorce from his former wife, who for years suffered from personal problems; having to be the sole care provider for his three sons; and his own struggles with attention deficit hyperactivity disorder and prostate cancer. Respondent also argued that he had already suffered substantial professional hardship as a result of his interim suspension and urged the court not to censure, suspend, or disbar him.
Thereafter, on March 24, 2011, the Southern District issued an order in which it found that respondent violated both the Rules of Professional Conduct and the predecessor Code of Professional Responsibility by:
*165 • commingling personal funds with funds belonging to others possessed incident to the practice of law, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (a) and (b), and Code of Professional Responsibility DR 9-102 (a) and (b) (22 NYCRR 1200.46 [a], [b]);
• failing to maintain complete records of funds belonging to third parties in the possession of an attorney, in violation of rule 1.15 (c) (3) and DR 9-102 (c) (3);
• failing to maintain required financial records for a period of seven years, in violation of rule 1.15 (d) and DR 9-102 (d);
• failing to cooperate with the COG’s investigation, in violation of rule 8.4 and DR 1-102 (22 NYCRR 1200.3); and
• failing to produce required records in response to a notice or subpoena issued in connection with the COG’s investigation, in violation of rule 1.15 (i) and (j), and DR 9-102 (i) and (j).
The Southern District decided to impose what it “regard[ed] as the most lenient sanction under the circumstances, a two-year suspension.”
Respondent affirmatively states that he is not asserting any of the defenses to reciprocal discipline enumerated at 22 NYCRR 603.3 (c), to wit: lack of notice and opportunity to be heard; infirmity of proof; and the misconduct at issue in the foreign jurisdiction would not constitute misconduct in New York. He does note that his suspension in the Southern District was imposed without a hearing but, even if he had not waived the defense of lack of opportunity to be heard, the record demonstrates that respondent received due process in the Southern District proceeding. He was advised of the allegations against him, the three orders to show cause advised him that discipline could be imposed, and he was given the opportunity to submit detailed responses to each. Moreover, Southern District Local Civil Rule 1.5 (d) (1) allows for the imposition of discipline without a formal hearing if the attorney’s response to an order to show cause “fails to show good cause to hold an evidentiary hearing.” In this instance, respondent’s submissions in response to the order to show cause, and his admissions during his deposition, satisfied rule 1.5 (d) (1). Furthermore, this Court has imposed reciprocal discipline based on federal disciplinary action taken without a hearing (see Matter of Hatton, 44 AD3d 49 [2007] [respondent disbarred where disbarment imposed by Southern District without a formal hearing based on respon *166 dent’s failure to respond to court orders to show cause, evidence of neglect, and respondent continued to practice while under interim suspension]).
Rather than assert a defense under 22 NYCRR 603.3 (c), respondent essentially reiterates the mitigation evidence presented in the Southern District proceeding. Thus, the only issue for this Court to decide is the appropriate sanction to be imposed. Respondent requests that this Court censure him, or, in the alternative, impose no greater sanction than a six-month suspension nunc pro tunc to February 15, 2011 (the effective date of his suspension in the Second Circuit).
As a general rule in reciprocal disciplinary matters, this Court gives significant weight to the sanction determination in the jurisdiction in which the misconduct at issue occurred (see Matter of Jaffe, 78 AD3d 152, 158 [2010]; Matter of Hatton, 44 AD3d at 52; Matter of Anschell, 11 AD3d 56 [2004]). Only in rare instances will this Court depart from its general rule (see Matter of Lowell, 14 AD3d 41 [2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]). Respondent’s two-year suspension in the Southern District was based, in large part, on his failure to maintain required financial records. Under the circumstances, such a sanction is in accord with this Court’s precedent (see Matter of Racer, 56 AD3d 125 [2008] [respondent suspended for four years for, inter alia, a pervasive practice of failing to keep required escrow account records and failing to cooperate with DDC investigation]; Matter of Levy, 307 AD2d 47 [2003] [three-year suspension imposed for misconduct that involved, inter alia, failure to keep required account records and a pervasive commingling of funds]; Matter of Tepper, 286 AD2d 79 [2001] [two-year suspension imposed for misconduct involving, inter alia, inadequate bookkeeping in connection with an escrow account, commingling of personal and client funds, and nonvenal invasion of client funds]; Matter of Cohen, 264 AD2d 94 [2000] [five-year suspension imposed for extensive escrow related misconduct that involved, inter alia, failure to keep proper records]). Respondent’s pattern of commingling funds and inadequate bookkeeping, while serious, is mitigated by significant family and health problems, and the lack of a disciplinary history. Nevertheless, we find that a two-year suspension (to be run concurrently with the Second Circuit’s six-month suspension) was a reasonable sanction under the circumstances for purposes of imposing reciprocal discipline.
*167 Accordingly, the Committee’s petition for reciprocal discipline should be granted, and respondent suspended from the practice of law in the State of New York for a period of two years, and until further order of this Court.
Gonzalez, P.J., Tom, Mazzaeelli, Acosta and DeGrasse, JJ., concur.
Respondent suspended from the practice of law in the State of New York for a period of two years, effective the date hereof and until further order of this Court.