*285 OPINION OF THE COURT
Per Curiam.
Respondent Fengling Liu was admitted to the practice of law in the State of New York by the Second Judicial Department on January 12, 2000.[1] At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.
By order of November 22, 2011, the United States Court of Appeals for the Second Circuit publicly reprimanded respondent for misconduct committed before the court in connection with immigration matters. Specifically, respondent was found to have, inter alia, engaged in a pattern of defaults, failed to keep clients apprised of the status of their cases, failed to properly terminate her representation, and failed to supervise a less experienced associate.
By notice of petition dated October 4, 2012, the Departmental Disciplinary Committee seeks an order, pursuant to Judiciary Law § 90 (2) and Rules of the Appellate Division, First Department (22 NYCRR) § 603.3, imposing reciprocal discipline on respondent, to wit, a public censure (the equivalent of a federal public reprimand), or, in the alternative, such discipline as this Court deems appropriate under the circumstances. Although served with this motion, respondent has not submitted a response.
By order of February 2, 2009, the Second Circuit referred respondent to its Committee on Admissions and Grievances (CAG) for an investigation and report on whether respondent and “Attorney A,” who was employed by respondent or acting on behalf of respondent’s law office, should be subject to disciplinary or other corrective measures. As to Attorney A, the court’s referral order noted that she had submitted deficient briefs in three cases, three appeals had been dismissed for failure to timely file a brief, she had filed 13 appeals with the Second Circuit although it was not the correct venue, and Attorney A had apparently drafted petitions for pro se appellants without disclosing her involvement to the court. The federal court’s view was that respondent may have been responsible for some or all of the aforementioned conduct by the associate. The court also noted that six appeals filed by respondent had been dismissed for her failure to comply with court ordered briefing schedules, another *286 appeal had been dismissed because she had failed to pay a filing fee after a motion for in forma pauperis status had been denied, and she had also filed 13 appeals in the Second Circuit, although it was not the correct venue.
Pursuant to the federal court’s direction, on February 25, 2009, respondent submitted an affidavit in response explaining her actions. She stated that the deficient briefs Attorney A had submitted were attributable to inadequate supervision on respondent’s part and respondent also took responsibility for the dismissed appeals, including those that the referral order had attributed to Attorney A. Respondent acknowledged further that all 26 appeals had been filed in the Second Circuit although it was not the correct venue, but explained they had been filed there because the Second Circuit was convenient and she had been told by a court clerk she could do this because eventually the improperly filed appeals would be transferred to the proper jurisdictions. Respondent also explained that the pro se petitions mentioned in the referral order (and attributed to Attorney A) were prepared by her office at her direction so as to preserve the appellate rights of those with limited financial resources, some of whom later actually retained respondent to file supporting briefs.
In June 2009, the CAG held a joint hearing at which both respondent and Attorney A appeared pro se and testified.[2] Thereafter, by order of July 29, 2009, the Second Circuit, inter alia, declined to suspend respondent pending completion of proceedings before the CAG. The Second Circuit also issued an additional referral order referring to the CAG yet another case that had been dismissed for failure to file a brief, and directed that respondent take steps to ensure that the correct attorney was listed as counsel of record for the cases identified in the order, as well as all other pending cases before the court in which any attorney affiliated with her office had appeared. After receiving respondent’s written response, the CAG determined that a second hearing was unnecessary and ultimately the CAG determined that respondent should not receive additional sanctions for the conduct that was referred by the federal court’s second referral order of July 29, 2009.
As to the conduct for which respondent was initially referred for investigation, the CAG issued an undated report in which it *287 found that respondent had committed misconduct. The CAG explained, in pertinent part:
“[t]he evidence demonstrates that in each of the cases that were dismissed on default, [respondent] neglected her duties and failed to prosecute her clients’ cases diligently. In several cases, [respondent] erroneously viewed the mere act of filing motions to withdraw as counsel as discharging any and all of her responsibilities as her clients’ attorney. When [respondent] knew that the motions to withdraw as counsel were denied, she took not a single step to continue to represent her clients. Assuming that [respondent] did not receive notice that certain motions to withdraw as counsel had been denied, she still did not follow up with the Court to confirm that the motions to withdraw were granted. [Respondent] did not provide any justification for her gross negligence. After filing motions to withdraw as counsel, it does not appear that [respondent] contacted her clients to update them about the status of their cases. [Respondent] did not explain to her clients that the motions to withdraw could be denied, and it seems that [respondent] did not accept the very real possibility that motions to withdraw can be denied. Furthermore, [respondent] did not inform her clients that if the motions to withdraw as counsel were denied, their cases would ultimately be dismissed if no further action was taken.
“In several instances, [respondent] simply failed to file a motion to withdraw as counsel, even though her clients clearly notified her that they wished to discharge her services (yet keep their cases open). While [respondent] did not recall why she failed to file motions to withdraw or follow up with the Court, she claimed that her clients were not prejudiced. Generally, it appears that [respondent] considered her representation to end once she determined that the best course of action was for her to withdraw as counsel.
“By ceasing to represent her clients even though the Court did not grant her motions to withdraw as counsel, [respondent] violated her obligation either *288 to represent her clients or terminate the representation. . . .
“[Respondent] was negligent for filing petitions for review in the Second Circuit even though she knew the correct venue was another circuit. According to [respondent], she filed petitions in an improper venue because it was more convenient for her to do so. Although [respondent] received numerous motions from U.S. Attorney’s Offices indicating that she was filing petitions in the wrong venue, she claimed that she did not know that practice was improper. By filing petitions in an improper venue, [respondent] acted negligently and without reasonable diligence, and caused the Court to expend resources in transferring cases to the correct venue.”
The CAG also concluded that respondent “violated her duty of candor” by helping pro se petitioners draft and file petitions for review without disclosing her role to the court.
The CAG found that the aforementioned conduct violated Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4] [conduct involving dishonesty, fraud, deceit, or misrepresentation]), DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7] [fitness as a lawyer]), DR 1-104 (b) and (c) (22 NYCRR 1200.5 [b], [c] [failure to adequately supervise]), DR 2-110 (a) (2) (22 NYCRR 1200.15 [a] [2] [failure to properly withdraw]), DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3] [neglect]) and DR 7-106 (c) (7) (22 NYCRR 1200.37 [c] [7] [disregard of court rule of procedure]).[3] However, the CAG concluded that respondent’s misconduct was not intentional, explaining in pertinent part:
“the [CAG] found no evidence that [respondent’s] conduct was intentionally violative in any way. [Respondent’s] misconduct appears to be due to a combination of negligence and misunderstanding of procedural rules. The [CAG] found no evidence that [respondent] intentionally or knowingly intended to ignore the Court’s orders or violate Court rules. Moreover, the [CAG] found no evidence that [respondent’s] defaults were the result of any deliberate or *289 reckless decision to increase the volume of her practice at the expense of her ability to represent her clients effectively.”
The CAG found both aggravating and mitigating factors. As to the aggravating factors, the CAG noted: (1) respondent’s pattern of negligence, which involved multiple instances of misconduct; and (2) the vulnerability of respondent’s immigration clients. As to mitigation, the CAG took into consideration that respondent: (1) had no prior disciplinary history; (2) had no selfish motive; (3) cooperated with the CAG; (4) expressed remorse; and (5) accepted responsibility for the “overwhelming majority” of incidents brought to the CAG’s attention, and explained that she, not Attorney A, was generally to blame for any misconduct. In terms of sanction, the CAG recommended that respondent be publicly reprimanded and subject to certain reporting requirements.
After reviewing the CAG’s report, respondent submitted a response to the Second Circuit. Although she agreed with most of the CAG’s findings, she denied that her misconduct had been intentional and stated that she had significantly reduced her caseload. She also assured the Second Circuit that, going forward, she would handle cases “diligently and competently” and argued that her clients had not been prejudiced by her defaults.[4] As to a sanction, respondent requested a private, as opposed to a public, reprimand.
In its November 22, 2011 order, the Second Circuit adopted all of the CAG’s findings, including its recommendation that respondent be publicly reprimanded, with the exception of the misconduct finding pertaining to respondent’s undisclosed ghostwriting of pro se petitions. With respect to this issue, the Second Circuit opined, in pertinent part:
“[i]n light of this Court’s lack of any rule or precedent governing attorney ghostwriting, and the various authorities that permit that practice, we conclude that [respondent] could not have been aware of any general obligation to disclose her participation to this Court. We also conclude that there is no evidence suggesting that [respondent] knew, or should have known, that she was withholding material information from the Court or that she other *290 wise acted in bad faith. The petitions for review now at issue were fairly simple and unlikely to have caused any confusion or prejudice. Additionally, there is no indication that [respondent] sought, or was aware that she might obtain, any unfair advantage through her ghostwriting. Finally, [respondent’s] motive in preparing the petitions — to preserve the petitioners’ right of review by satisfying the thirty-day jurisdictional deadline — demonstrated concern for her clients rather than a desire to mislead this Court or opposing parties. Under these circumstances, we conclude that [respondent’s] ghostwriting did not constitute misconduct and therefore does not warrant the imposition of discipline” (internal footnotes omitted).
On the issue of sanction, the Court opined, in pertinent part: “[although we have found that [respondent’s] ghostwriting did not constitute misconduct, we conclude that her other misconduct was sufficiently serious to warrant a public, rather than private, reprimand.”
In deciding the DDC’s petition, the Court considers that the only defenses to reciprocal discipline are enumerated at 22 NYCRR 603.3 (c). The defenses are a lack of notice and opportunity to be heard in the foreign jurisdiction, an infirmity of proof establishing the misconduct, and the misconduct at issue in the foreign jurisdiction would not constitute misconduct in New York. Although respondent has not appeared nor asserted any of the enumerated defenses, none are available.
Respondent was afforded sufficient due process before the Second Circuit by receiving notice of the allegations at issue in the CAG proceeding via the Second Circuit’s referral order and responding thereto. She testified at the June 2009 hearing and responded to the CAG’s report. In addition, the Second Circuit’s misconduct findings are amply supported by respondent’s own admissions in writing and by her testimony. Furthermore, both the CAG and the Second Circuit found respondent violated DR 1-102 (a) (7), DR 1-104 (b) and (c), DR 2-110 (a) (2), DR 6-101 (a) (3) and DR 7-106 (c) (7), thereby satisfying the third prong of the test.
In reciprocal disciplinary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (see Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]; Matter of Jarblum, 51 AD3d 68 [1st Dept *291 2008]). Only in rare instances will this Court depart from its general rule (see Matter of Lowell, 14 AD3d 41, 48 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]).
In this instance, a public censure (the equivalent of a federal public reprimand) is in accord with this Court’s precedent involving similar misconduct (see Matter of Kuzmin, 98 AD3d 266 [1st Dept 2012] [respondent publicly reprimanded by Second Circuit for, inter alia, multiple instances of failing to meet briefing deadlines and failing to formally withdraw from, or stipulate to dismissal of, abandoned cases, reciprocally censured by this Court]; Matter of Gell, 94 AD3d 116 [1st Dept 2012] [respondent publicly reprimanded by Second Circuit for failing to comply with the court’s scheduling orders resulting in dismissal of numerous petitions for review, and for practicing before the court without being admitted, reciprocally censured by this Court]; Matter of Adinolfi, 90 AD3d 32 [1st Dept 2011] [respondent publicly censured based on a public reprimand issued by the Second Circuit for misconduct involving, inter alia, numerous failures to submit timely briefs in support of petitions for review]; Matter of Salomon, 78 AD3d 115 [1st Dept 2010] [respondent who, inter alia, neglected six immigration matters, publicly censured]).
Accordingly, it is recommended to grant the Committee’s petition for reciprocal discipline and respondent should be publicly censured.
Andelas, J.E, Friedman, DeGrasse, Feinman and Gische, JJ., concur.
Respondent publicly censured.

. The Departmental Disciplinary Committee’s petition incorrectly states that respondent was admitted by the First Department.

. The Committee on Admissions and Grievances issued a separate report with respect to Attorney A.

. Respondent’s misconduct occurred prior to April 1, 2009 and therefore must be evaluated under the former New York Code of Professional Responsibility. The CAG’s DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) finding, which pertained to the ghostwriting of pro se petitions, was not adopted by the Second Circuit (discussed infra).

. While the Committee did not provide a copy of respondent’s response, its contents are well-documented in the record.