Matter of Breakstone (2020 NY Slip Op 03482)





Matter of Breakstone


2020 NY Slip Op 03482


Decided on June 18, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 18, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. David Friedman, Justice Presiding,
Judith J. Gische
Barbara R. Kapnick
Troy K. Webber
Lizbeth González, Justices.


M-544

[*1]In the Matter of Douglas M. Breakstone, (admitted as Douglas Mead Breakstone), a suspended attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Douglas M. Breakstone, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Douglas M. Breakstone, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on January 22, 1990.



Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Sean A. Brandveen, of counsel), for petitioner.
Respondent pro se.



PER CURIAM.


Respondent Douglas M. Breakstone was admitted to the practice of law in the State of New York by the First Judicial Department on January 22, 1990, under the name Douglas Mead Breakstone. Respondent's last registered address was in Connecticut where he is admitted to practice.
By order of October 12, 2006, respondent was suspended from the practice of law in New York, until further order of this Court, as part of a mass suspension proceeding, for failure to file attorney registration statements and pay biennial registration fees (36 AD3d 34 [1st Dept 2006]). To date, respondent remains suspended in New York.
By order dated December 1, 2017, the Superior Court of Connecticut reprimanded respondent for escrow related misconduct that included nonvenal misappropriation of client funds.
Now, the Attorney Grievance Committee (AGC) seeks an order, pursuant to Judiciary Law § 90(2), the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13, and the doctrine of reciprocal discipline, imposing the sanction of public censure, or in the alternative, imposing whatever sanction this Court deems appropriate, if any.
The facts are undisputed. A random audit conducted by the Connecticut Statewide Grievance Committee uncovered respondent's mishandling of estate funds. In June 2013, respondent issued a check for $9,157.95 drawn against his IOLTA account to the executor of his late mother's estate. The check was for full disbursement of recently discovered funds that belonged to the estate. The executor never negotiated or cashed the check. In September 2014, the executor contacted respondent and requested an immediate replacement check. Respondent had recently run out of IOLTA checks and his bank was no longer able to provide him with temporary ones. Upon agreement with the executor, respondent transferred the estate's funds from his IOLTA account to his operating account (which left a balance of $50.41 in the IOLTA account) and, on September 10, 2014, issued the executor a second check for $9,157 drawn against his operating account which the executor never negotiated or cashed. In October 2016, the executor returned the second check to respondent because it was stale and respondent issued him a third check which he again failed to cash.
The Statewide Grievance Committee's audit showed that between January and October 2015 the balance of respondent's operating account repeatedly fell below the $9,157 he should have continuously held intact for the executor. As of July 2015, the account balance had fallen to $201.83. In March 2016, respondent advised the Grievance Committee that on December 10, 2015, he deposited $9,157.95 into his "trustee account" to be held for payment to the estate.
In or about April 2016, the Grievance Committee filed a complaint with a Grievance Panel. By July 28, 2016 letter, the Grievance Panel informed the parties that there was no need for a hearing as the record supported a finding of probable cause that respondent had engaged in professional misconduct. The Grievance Panel referred the matter back to the Statewide Grievance Committee for further proceedings.
On January 5, 2017, a hearing was held before a Reviewing Committee. Respondent appeared pro se and admitted that he committed misconduct by invading the estate's funds but asserted that the monies were never at risk as he had sufficient funds in his other personal accounts to make good thereon. By February 24, 2017 decision, the Reviewing Committee concluded by clear and convincing evidence that respondent had engaged in misconduct in that he failed to hold and safeguard client funds in an IOLTA account separate from his personal funds in violation of Connecticut Rules of Professional Conduct (CT RPC) rules 1.15(b) and 1.15(h) and Connecticut Practice Book § 2-27(a) (which mandates compliance with CT RPC 1.15 and prohibits an attorney from using client and/or third-party funds "for any unauthorized purpose"). In addition, notwithstanding the executor's failure to negotiate the three tendered checks, respondent failed to take affirmative action to insure prompt delivery of the funds at issue to the estate in violation of CT RPC 1.15(e). The Reviewing Committee directed the Grievance Committee to file charges against respondent with the Connecticut Superior Court.
In April 2017, the Grievance Committee filed charges against respondent with the Superior Court. In June 2017, respondent remitted the monies owed to the estate to successor counsel. On November 21, 2017, the court held a hearing on the charges. The Grievance Committee's case consisted of correspondence with respondent, audit documents, and respondent's bank statements. Before the court, respondent, pro se, again admitted that he committed misconduct but asserted that his invasions of the estate's funds were due to inadvertent oversight on his part, rather than malice, for which he apologized; he claimed that at all times he had sufficient personal funds to make full restitution, and he argued against suspension.
By December 1, 2017 memorandum decision, the court found that respondent had committed professional misconduct and issued him a formal reprimand (Office of Chief Disciplinary Counsel v Breakstone, 2017 WL 6884023, 2017 Conn Super LEXIS 5059 [Conn Super Ct 2017]).
The AGC advises that respondent failed to notify them of his discipline in Connecticut as required by 22 NYCRR 1240.13(d) and it was the Connecticut Statewide Grievance Committee which notified the AGC. Nevertheless, the AGC takes the position that while respondent's failure to notify them of his discipline in Connecticut, along with his New York suspension for failure to meet his registration obligations could arguably be viewed as aggravation, "they need not augment this Court's potential sanction here."
By letter, respondent advises that he has no objection to the AGC's recommendation of a public censure and he asserts that he is no longer practicing law on a full time basis, nor has he ever practiced law in New York.
In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 1240.13, respondent may raise the following defenses: (1) a lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; or (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state.
While respondent has not asserted any of the enumerated defenses, none are available to him. He was advised of the allegations against him and appeared at the hearings before the Reviewing Committee and the Superior Court at which he admitted to having committed professional misconduct. In addition, the Reviewing Committee's and the Superior Court's misconduct findings are fully supported by the record which includes respondent's admissions. Further, the misconduct for which respondent was disciplined in Connecticut would constitute misconduct in violation of New York Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.15(a), 1.15(b), 1.15(c)(1), and 1.15(c)(4).
Thus, the only issue left is the appropriate sanction to impose. As a general rule in reciprocal discipline cases, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]). Only in rare instances will this Court depart from its general rule (Matter of McHallam, 160 AD3d 89, 92 [1st Dept 2018]; Matter of Lowell, 14 AD3d 41 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]).
A public censure, the equivalent of a reprimand in Connecticut, is in accord with this Court's precedent involving similar misconduct (see e.g. Matter of Bassetti, 143 AD3d 27 [1st Dept 2016]; Matter of Cardenas, 124 AD3d 123 [1st Dept 2014]; Matter of Guillorn, 114 AD3d 134 [1st Dept 2013]; Matter of Deitch, 109 AD3d 1 [1st Dept 2013]; Matter of Colarossi, 97 AD3d 117 [1st Dept 2012].
Accordingly, the motion is granted to the extent of publicly censuring respondent. Further, respondent remains suspended in New York for his failure to file attorney registration statements and pay his biennial registration fees.
All concur.
Order filed. [June 18, 2020]
The motion for reciprocal discipline pursuant to 22 NYCRR 1240.13. is granted to the extent that respondent is publicly censured. Respondent remains suspended in the State of New York for his failure to file attorney registration statements and pay his biennial registration fees.