Matter of Wait (2025 NY Slip Op 01583)

Matter of Wait

2025 NY Slip Op 01583

Decided on March 18, 2025

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 18, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Present — Hon. Troy K. Webber Justice Presiding
Peter H. Moulton Ellen Gesmer Julio Rodriguez III Kelly O'Neill Levy
Justices.

Motion No. 2024-06127|Case No. 2024-07573|

[*1]In the Matter of Matthew Thomas Wait an attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Matthew Thomas Wait (OCA Atty Reg. 4458949), Respondent.

Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Diana Neyman, of counsel), for petitioner
Respondent, pro se.
Per Curiam 

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Matthew Thomas Wait, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on December 5, 2006.
Motion No. 2024-06127 — January 21, 2025
In the Matter of Matthew Thomas Wait, an attorney
Per Curiam Respondent Matthew Thomas Wait was admitted to the practice of law in theState of New York by the First Judicial Department on December 5, 2006. Respondentmaintains a registered address in New Jersey. This Court retains continuing jurisdictionover respondent as the admitting Judicial Department (Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.7[a][2]).
By August 13, 2024 order, the Supreme Court of New Jersey publicly reprimanded respondent for nonvenal escrow related misconduct.
By motion dated December 12, 2024, the Attorney Grievance Committee (AGC) seeks an order, pursuant to Judiciary Law § 90(2), 22 NYCRR 1240.13, and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction, directing him to demonstrate why discipline should not be imposed in New York for the misconduct underlying his discipline in New Jersey, and imposing a public censure, or issuing such discipline as the Court deems just and proper.
In or about May 2024, respondent entered into a joint motion for discipline by consent with the New Jersey Office of Attorney Ethics (OAE) in which he admitted that he committed professional misconduct and consented to discipline.
As relevant here, in March 2021, the OAE selected respondent's law firm for a random compliance audit. At the time, respondent was the attorney responsible for his firm's compliance with New Jersey's recordkeeping rules. The audit revealed recordkeeping deficiencies in violation of New Jersey Rules of Court 1:21-6, namely: client ledger cards with negative balances; inactive balances left in the firm's attorney trust (i.e., escrow) account; outstanding and unresolved escrow account checks; commingling; improper designation of the firm's business and escrow accounts; an insufficiently descriptive business account disbursements journal; and improper image processed business account checks. Also, as of May 28, 2021, the firm's escrow account had a $387,072.96 deficit affecting 587 clients and $606,719.87 in inactive balances affecting 496 clients.
In September 2022, the OAE sent the firm a letter noting that five of the deficiencies cited above had been previously identified in an April 2008 random audit but remained unresolved. In June 2023, the OAE opened an investigation due to the firm's substantial invasion of client funds and it sent respondent a letter regarding his firm's recordkeeping deficiencies.
By [*2]June 12, 2023 certification, respondent explained that he was responsible for his firm's recordkeeping from September 2014 until April 2022, when he left the firm. Respondent maintained that, until 2021, he had no knowledge of the recordkeeping deficiencies identified by the 2008 OAE audit; he was unaware that any client ledger cards carried a negative balance; and the inactive balances began to accrue well before he joined the firm and were comprised of doctor fees and expenses associated with personal injury matters. Respondent claimed that he had attempted to work with the attorneys whose clients were connected with the inactive balances, but this proved for the most part to be ineffective because respondent lacked authority within the firm's management hierarchy. Respondent further attributed the identified commingling to the firm's bookkeeper erroneously depositing funds into the wrong account (which the partners failed to remedy after respondent informed them of the errors); denied knowledge of the improper account designations and improperly image processed business account checks; and noted that the insufficient disbursement information in the firm's business account journal, of which he was unaware, was provided by the attorneys who worked on the client matters.
Following respondent's submission, the OAE interviewed respondent and reviewed the firm's records. The OAE determined that the firm should have been holding $1,093,247.01 for 587 clients, but, as of May 28, 2021, the firm was only holding only $767,755.65 in its escrow account. Additionally, due to outstanding checks totaling $615,871.60, the escrow account held only $706,174.05 in available client funds, leaving a $387,072.96 deficit resulting in an invasion of funds belonging to the 587 clients.
The OAE's audit further revealed that from March 2017 until the firm corrected the deficit in December 2022, it routinely incurred escrow account shortages which ranged from $2,599 to $405,883. The OAE could not fully determine the origins of the account shortages because they predated the mandated seven-year record holding period. The shortages also predated respondent's management of the escrow account. Nevertheless, respondent was the attorney responsible for the account during the audit period, but failed to identify or correct the deficiencies between 2017 and 2022.
Notwithstanding that some of the firm's recordkeeping deficiencies predated respondent's employment, he admitted that their continuation during the period in which he was responsible for the firm's financial recordkeeping constituted professional misconduct on his part. Specifically, by allowing his firm's escrow account to remain out of trust for five years, and thereby perpetuating an "ongoing and significant invasion of client funds," respondent violated New Jersey Rules of Professional Conduct (NJRPC) rule 1.15(a) (negligent misappropriation of client funds); and by failing to maintain his firm's bookkeeping records [*3]in compliance with New Jersey Rules of Court 1:21-6, respondent violated NJRPC rule 1.15(d).[FN1]
The parties stipulated that respondent's misconduct was aggravated by his failure to correct the recordkeeping deficiencies and the resulting negligent misappropriation involved a substantial sum of client funds. They also stipulated as to mitigation, namely, respondent had no disciplinary history in almost 20 years of practice, he admitted his misconduct, and fully cooperated with the OAE's investigation. The parties agreed that a censure, or such lesser discipline as recommended by the New Jersey Disciplinary Review Board (DRB), was the appropriate sanction for the misconduct at issue.
Following its review of the record, the DRB granted the parties' joint motion for discipline by consent and determined to impose a public reprimand (lesser discipline than a censure) because, among other things, the "responsibility for the magnitude of the recordkeeping violations d[id] not lie solely with respondent."
By August 13, 2024 order, the Supreme Court of New Jersey affirmed the DRB's decision and reprimanded respondent (258 NJ 357, 318 A3d 684 [2024]). Respondent timely reported his discipline in New Jersey to the AGC (22 NYCRR 1240.13[d]).
As noted, the AGC now seeks an order, pursuant to Judiciary Law § 90(2), 22 NYCRR 1240.13, and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction and imposing a public censure or issuing such discipline as the Court deems just and proper. The AGC served the motion by email with respondent's consent, but he has not submitted a response.
In a proceeding seeking reciprocal discipline, as here, pursuant to 22 NYCRR 1240.13, respondent may raise the following defenses: (1) lack of notice or opportunity to be heard in the foreign jurisdiction constituting a depravation of due process; (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state (see Matter of Milara, 194 AD3d 108, 110 [1st Dept 2021]).
Even though respondent has not appeared and asserted any of the enumerated defenses, the AGC correctly argues that none are available to him. First, respondent received notice of the misconduct allegations at issue, submitted a response to the OAE addressing same, and entered into a stipulation admitting to misconduct and consenting to the discipline imposed. Moreover, there is, as the AGC observes, ample proof of his misconduct, namely, his admissions and corroborating documentary evidence. Finally, respondent's misconduct in New Jersey would also constitute misconduct in violation of New York Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.15(a) and 1.15(d). Therefore, this Court should impose reciprocal discipline (22 NYCRR 1240.13[c]).
As to sanction, the AGC argues that a public censure is the appropriate reciprocal discipline [*4]herein as it is commensurate with the public reprimand imposed in New Jersey and supported by precedent.
This Court's general rule is that "significant weight should be given to the sanction imposed by the jurisdiction where the misconduct occurred because the foreign jurisdiction has the greatest interest in fashioning sanctions for misconduct" (Matter of Blumenthal, 165 AD3d 85, 86 [1st Dept 2018]; Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]), with only rare instances supporting a departure (Matter of McHallam, 160 AD3d 89, 92 [1st Dept 2018]; Matter of Lowell, 14 AD3d 41 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]).
A public censure is the appropriate reciprocal discipline in this matter as it is commensurate with the public reprimand issued in New Jersey and in broad accord with this Court's precedent (see e.g. Matter of Marks, 204 AD3d 129 [1st Dept 2022]; Matter of Breakstone, 184 AD3d 267 [1st Dept 2020]; Matter of Bassetti, 143 AD3d 27 [1st Dept 2016]).
Accordingly, the AGC's motion should be granted, and respondent publicly censured.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department for reciprocal discipline, pursuant to Judiciary Law § 90(2) and 22 NYCRR 1240.13, predicated upon similar discipline imposed by the Supreme Court of New Jersey, is granted, and respondent, Matthew Thomas Wait, is publicly censured.
Entered: March 18, 2025

Footnotes

Footnote 1: As noted, the OAE's March 2021 audit identified commingling as a recordkeeping violation; however, it did not bring a commingling charge against respondent.