Matter of Tejada (2026 NY Slip Op 00020)

Matter of Tejada

2026 NY Slip Op 00020

Decided on January 06, 2026

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Motion No. 2025-05379|Case No. 2025-05981|

[*1]In the Matter of Margarita Claribel Tejada, an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Margarita Claribel Tejada (OCA Atty. Reg. No. 4868667), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Margarita Claribel Tejada, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on May 4, 2011.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York City
(Louis J. Bara, of counsel), for petitioner.
Respondent, pro se.

Per Curiam 

Respondent Margarita Claribel Tejada was admitted to the practice of law in the State of New York by the Appellate Division, First Judicial Department on May 4, 2011. This Court maintains jurisdiction over respondent by virtue of respondent's business address on file with the Office of Court Administration that lies within the First Judicial Department (Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.7[a][2]).
On May 7, 2025, respondent and the Utah Office of Professional Conduct (OPC) entered into a discipline by consent and settlement agreement (Utah DBC) in which she admitted to violating Utah Rules of Professional Conduct (URPC) rule 1.5(a) (prohibiting making an agreement for, charging, or collecting unreasonable fees or expenses) by charging and/or collecting fees that were excessive for the work that respondent actually performed, charging and/or collecting fees at her attorney rate for work that was in fact clerical, and charging and/or collecting money for expenses that respondent did not incur. Respondent also admitted that she violated URPC rule 1.15(a) (requiring that a lawyer maintain client and third-party funds separately from their own) by depositing a client's retainer fee directly into her operating account, failing to hold the client's funds separately from her own, and failing to deposit the client's retainer funds into a client trust account.
These violations were based on the following facts that respondent admitted to as part of the Utah DBC. On September 1, 2021, respondent accepted a $5,000 retainer payment from C.S. to represent her in an adjustment of status immigration proceeding. The retainer agreement provided that C.S. would be charged an additional $400 flat fee each time that she brought a new document to respondent's office if said document was not provided within one week of signing the retainer agreement. The retainer agreement also stated that C.S. would be charged an additional $208 flat fee every time that she needed to change her mailing address and another $208 consultation fee each time that she had additional questions unrelated to her case or provided additional facts that could impact her case.
On September 1, 2021, respondent invoiced C.S. $5,000 for "VAWA [Violence Against Women Act] attorney's fees," a filing fee of $1,225, and a shipping charge of $30. The invoice reflected that C.S. paid the $5,000 retainer but still had a balance of $1,225 owed. Respondent also billed C.S. $800, at a rate of $400 per hour, for two hours that she spent preparing the retainer agreement and creating the initial invoice. Respondent also billed C.S. $200 for 30 minutes that she represented was the time that it took her to receive the retainer payment and schedule an Uber ride. That same day, respondent deposited C.S.'s $5,000 retainer payment into her operating account. The next day, respondent billed C.S. $800 for two hours that she spent scanning and filing documents that C.S. provided to her firm's paper and electronic filing system. Respondent also billed C.S. $2,000 for five hours that she spent completing various immigration forms.
On September 20, 2021, following a phone call between respondent and C.S., the representation was terminated, and on October 3, 2021, respondent billed C.S. $200, again at a rate of $400 per hour, for 30 minutes that she purportedly spent organizing documents to be sent to C.S. and printing a shipping label. On October 4, 2021, respondent mailed C.S. copies of documents that she had prepared for C.S. and a letter terminating the representation, including an invoice that showed an outstanding balance of $4,418.98 to be paid immediately. The invoice indicated that C.S. was charged at a rate of $400 per hour, regardless of whether it was respondent or a non-lawyer employee at her firm who performed the services and whether the work was legal or administrative work. Respondent never filed C.S.'s adjustment of status application and therefore had never incurred the $1,225 filing fee. Nevertheless, the filing fee, along with the $30 shipping fee, still appeared on the invoice.
As part of the Utah DBC, respondent and the OPC stipulated that her lack of a disciplinary record was a mitigating factor and that there were no aggravating factors. As to respondent's sanction, the parties agreed that a one-year term of probation was appropriate, with the understanding that she attend Trust Accounting School, amend her fee agreement to better conform the URPC, and agree to supervision by another attorney, approved by the OPC, for the probation period. By May 7, 2025 order, the Third Judicial District Court in and for Salt Lake County, State of Utah (Third Judicial District Court) approved the Utah DBC and directed that respondent be disciplined in accordance therewith.
Respondent did not notify the Attorney Grievance Committee (AGC) of her discipline in Utah as required by 22 NYCRR 1240.16(d). Instead, the AGC was notified by the Utah Office of Professional Conduct.
The AGC now seeks an order from this Court, pursuant to the doctrine of reciprocal discipline as set forth in 22 NYCRR 1240.13 and Judiciary Law § 90(2), disciplining respondent, predicated on the order of probation imposed by the Third Judicial District Court, and directing her to demonstrate to this Court why discipline should not be imposed in New York in the form of a public censure or, in the alternative, sanctioning respondent as this Court deems just and proper under the circumstances.
"In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 1240.13, respondent may raise the following defenses: (1) a lack of notice and opportunity to be heard in the foreign jurisdiction; (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct at issue in the foreign jurisdiction would not constitute misconduct in New York" (Matter of Milara, 194 AD3d 108, 110 [1st Dept 2021]).
Respondent has not appeared in the instant reciprocal disciplinary proceeding and as such has not asserted any of the enumerated defenses. Regardless, none are available to her. First, respondent was given proper notice and had an opportunity to answer the allegations in the Utah proceeding, and she voluntarily entered into the discipline by consent and settlement agreement. Second, respondent has no basis to raise an infirmity-of-proof defense, as she admitted to the allegations in the Utah DBC. Third, her misconduct for violating Utah rule 1.5(a) would constitute misconduct in New York in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.5(a) (prohibiting making an agreement for, charging, or collecting excessive or illegal fees or expenses). Accordingly, because no defense can prevail, the imposition of reciprocal discipline is appropriate and the only issue that remains is what sanction to impose.
With respect to the sanction, in reciprocal disciplinary proceedings, this Court's general rule is that "significant weight should be given to the sanction imposed by the jurisdiction where the misconduct occurred because the foreign jurisdiction has the greatest interest in fashioning sanctions for misconduct" (Matter of Blumenthal, 165 AD3d 85, 86 [1st Dept 2018], citing Matter of Jaffe, 78 AD3d 152 [1st Dept 2010]). "Only in rare instances will this Court depart from its general rule" (Matter of Tustaniwsky, 204 AD3d 162, 165 [1st Dept 2022]).
While 22 NYCRR 1240 does not provide for discipline in the form of probation, a public censure, as requested by the AGC, is the appropriate sanction here, as it generally accords with this Court's precedent involving comparable misconduct (see Matter of Doria, 165 AD3d 33 [1st Dept 2018]; Matter of Kuzmin, 98 AD3d 266 [1st Dept 2012]; Matter of Wertheimer, 286 AD2d 44 [1st Dept 2001]; Matter of Cipolla, 233 AD2d 58 [1st Dept 1997]).
Accordingly, the AGC's motion for reciprocal discipline should be granted and respondent publicly censured.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department for reciprocal discipline, pursuant to 22 NYCRR 1240.13 and Judiciary Law § 90(2), is granted, and respondent, Margarita Claribel Tejada, is publicly censured.
Entered: January 6, 2026