[3 NYS3d 357]

In the Matter of KRISTAN PETERS (Admitted as KRISTAN LIZA-BETH PETERS) an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 3, 2015

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Naomi F. Goldstein* of counsel), for petitioner.

*Richard M. Maltz*, for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the Third Judicial Department on May 16, 2000 as Kristan Lizabeth Peters. She was also admitted to the bar in Connecticut, where she currently resides. At all times relevant to this proceeding, respondent maintained an office for the practice of law in the First Judicial Department.

By order of April 10, 2013 (*In re Peters*, 941 F Supp 2d 359 [SD NY 2013]), the United States District Court for the Southern District of New York (Southern District) suspended respondent for seven years, nunc pro tunc to April 10, 2008 (the date of her interim suspension) for misconduct committed in connection with a federal civil action. Specifically, respondent was suspended for instructing an associate in her law firm to alter deposition transcripts with work product for the purpose of preventing their discoverability and misleading the court as to the matter; copying the transcripts in intentional disregard of the court's orders; and using the transcripts in a federal action in Massachusetts in violation of the court's confidentiality order.

Respondent's misconduct arose out of a federal lawsuit commenced in 2007 by the law firm of Dorsey & Whitney on behalf of Wolters Kluwer Financial Services, Inc. (Wolters). Respondent, then a partner at Dorsey & Whitney, was lead counsel in the matter. Wolters alleged that three of its former employees had taken certain proprietary information and divulged it to their new employer. The district court granted a temporary restraining order and ordered expedited discovery. The parties exchanged discovery documents, and the individual defendants were deposed. While discovery was ongoing, the district court entered a confidentiality order providing in part that certain material—including all discovery material at issue here—"shall not be used in any other litigation proceeding," and that the district court's jurisdiction to enforce those restrictions would survive the lawsuit.

The defendants moved to dismiss on the ground, inter alia, that the district court lacked personal jurisdiction over the de-

fendants, all of them located in Massachusetts. The Dorsey attorneys then began to consider voluntary dismissal in New York and re-filing in the District of Massachusetts. Wolters gave respondent permission to dismiss the suit. During a subsequent conference call with the court and opposing counsel, however, respondent did not mention the pending dismissal. Either during or shortly after the conference call, respondent (the partner in charge) instructed the junior partner on the case to file the dismissal; the junior partner sent notice of the dismissal by regular mail—though not electronically.

Despite the dismissal, respondent refused to return the discovery material produced by the defendants, including three CDs (containing 153,000 pages of documents) that were produced after the dismissal had been quietly effected. Despite repeated orders by the district court to return all discovery material, including copies of deposition transcripts, the return of discovery material was not completed until two weeks after the suit was dismissed. In the meantime, respondent filed a motion for temporary injunctive relief in the District of Massachusetts, appending 115 pages of material produced in New York that were subject to the confidentiality order.

The defendants moved for sanctions, and the district court scheduled an evidentiary hearing. The parties subsequently settled, and the defendants withdrew the sanctions motion; but the court, having its own concerns regarding the lawyers' conduct, proceeded with the hearing. After a five-day evidentiary hearing, during which respondent, represented by counsel, testified on November 30, 2007, the district court imposed a total of 27 non-monetary sanctions on respondent, among others.[1] In addition, the district court referred respondent to the Southern District Committee on Grievances (Grievance Committee).[2]

After the Second Circuit affirmed the sanctions imposed on respondent by the district court,[3] the Grievance Committee concluded that respondent's misconduct had violated: New York Code of Professional Responsibility DR 1-102 (a) (5) (22

1. The district court also imposed reprimands on the Dorsey & Whitney firm and partner Marc Reiner, Esq., but, on appeal, the Second Circuit vacated the sanctions imposed against them (*Wolters Kluwer Fin. Servs., Inc. v Scivantage*, 564 F3d 110, 112 [2d Cir 2009], *cert denied* 558 US 1037 [2009]).

2. The district court also referred respondent to the First Department's Disciplinary Committee, which decided to wait for the Grievance Committee to complete its investigation before taking any action.

3. *Wolters Kluwer Fin. Servs., Inc.*, 564 F3d at 112.

NYCRR 1200.3 [a] [5]), which prohibited conduct prejudicial to the administration of justice; DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), which prohibited a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and DR 7-106 (a) (22 NYCRR 1200.37 [a]), which prohibited a lawyer from disregarding, or advising a client to disregard, a ruling of a tribunal made in the course of a proceeding.

On appeal, by a decision and order dated April 25, 2011, the Second Circuit vacated the Grievance Committee's suspension order and remanded for further proceedings, finding that respondent was entitled to an evidentiary hearing on the defaced transcript allegations (*In re Peters*, 642 F3d 381, 390 [2d Cir 2011]).[4] As to the breach of the confidentiality order, the Second Circuit found that, while respondent unquestionably violated the order, the Grievance Committee had made insufficient findings as to whether respondent had the requisite venal intent to sustain a DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) violation (*id.* at 394-398). The Second Circuit also noted that should the Grievance Committee determine after additional proceedings that a suspension or disbarment was warranted, it should explain its rationale for the severity of the sanction imposed (*id.* at 398). Notably, the Second Circuit emphasized that in vacating the Grievance Committee's suspension order, it was not suggesting that the disciplinary charges against respondent were improperly brought, only that certain procedures and findings were inadequate (*id.*).

On remand, the Grievance Committee assigned the proceeding against respondent to a Magistrate, who, between June and August 2012, conducted an 11-day evidentiary hearing at which respondent testified on her own behalf and cross-examined witnesses. In a 118-page report dated January 23, 2013, the Magistrate found that respondent acted with a culpable state of mind when she committed the misconduct with which she was charged, namely: respondent's direction to an associate to alter or amend documents for the purpose of preventing their discoverability and the attempt to mislead the court as to these events; and respondent's copying of transcripts

---

4. The court noted that although it had already affirmed the district court's underlying sanctions order to the extent it reprimanded respondent, "the two charges upon which the Grievance Committee's suspension is based were not addressed in that prior appeal, since this Court limited its review of Judge Baer's order to three other charges" (*id.* at 384).

and ordering of additional copies of transcripts in intentional disregard of the court's orders, and subsequent use of the transcripts in the Massachusetts action in violation of the confidentiality order. In mitigation, the Magistrate considered respondent's previously unblemished 25-year legal career. As to aggravation, the Magistrate noted that respondent refused to acknowledge her misconduct; was "untruthful" during the hearing; and "[came] dangerously close to engaging in bad faith obstruction of the disciplinary proceeding." As to sanction, the Magistrate recommended a five-year suspension, nunc pro tunc to April 10, 2008.

By decision of April 10, 2013, the Grievance Committee adopted the Magistrate's findings of fact and conclusions of law, but suspended respondent from practice before the Southern District of New York for seven years, nunc pro tunc to April 10, 2008. The Grievance Committee believed that respondent was deserving of a longer punishment for the following reasons:

> "[Respondent's] most serious failing involves the corruption of a young and inexperienced lawyer, over whom she had power and authority, and whom she ordered to commit conduct that could have ended with his own disciplinary hearing. . . . [Respondent] exhibits no remorse for her inappropriate conduct; rather, she arrogantly persists in trying to salvage her reputation at the expense of the unfortunate [associate]—branding him and others at the Dorsey firm as liars when it is she who has consistently lied, both about what she did and about why she did it.

> "Equally problematic is Respondent's habit of twisting the truth. At the hearing, [respondent] continually tried to shift blame to virtually every other person who came within arm's length of the *Wolters Kluwer* case . . . Respondent's flagrant mischaracterization of the record, and her meritless objections to [the Magistrate's] carefully crafted and amply supported findings, indicate that she has yet to accept any responsibility for what the Committee views as serious professional wrongdoing" (*In re Peters*, 941 F Supp 2d 359, 366 [SD NY 2013]).

Respondent, represented by counsel, appealed to the Second Circuit, which by decision of April 4, 2014 affirmed the seven-

year suspension imposed by the Grievance Committee, noting that "[i]n view of the [Grievance] Committee's conclusions regarding the nature of [respondent's] conduct, we cannot say that its imposition of a seven-year suspension was 'substantively unreasonable,' shocking to the judicial conscience, or otherwise unsupportable" (*Peters v Committee on Grievances for U.S. Dist. Ct. for S. Dist. of N.Y.*, 748 F3d 456, 463 [2d Cir 2014], *cert denied* 574 US —, 135 S Ct 448 [2014]).

The Departmental Disciplinary Committee now seeks an order pursuant to Judiciary Law § 90 (2) and Rules of the Appellate Division, First Department (22 NYCRR) § 603.3, suspending respondent for seven years nunc pro tunc to April 10, 2008, which in New York is equivalent to disbarment, predicated upon similar discipline imposed by the Southern District of New York. In response, respondent requests that this Court impose a short, unspecified suspension nunc pro tunc to April 10, 2008 and that respondent's reinstatement be made automatic.

Respondent does not assert any of the defenses to reciprocal discipline enumerated at 22 NYCRR 603.3 (c) that is, lack of notice and opportunity to be heard, infirmity of proof, or the absence of any comparable New York provision warranting discipline for the misconduct identified by the foreign jurisdiction. We note that respondent was represented by counsel throughout the course of the federal disciplinary proceedings. She was afforded adequate due process before the United States District Court for the Southern District of New York, having been advised of the allegations against her in the district court's several orders to show cause, to each of which she responded with a detailed submission prepared with the assistance of counsel, was afforded an evidentiary hearing at which she testified on her own behalf and cross-examined witnesses, filed objections to the Magistrate's report, twice appealed to the Second Circuit, and to the United States Supreme Court. Further, there is ample evidentiary support for the Grievance Committee's findings that respondent violated Code of Professional Responsibility DR 1-102 (a) (4), (5) and DR 7-102 (a) (5) (22 NYCRR 1200.3 [a] [4], [5]; 1200.33 [a] [5]) and DR 7-106 (a) (22 NYCRR 1200.37 [a]).

Thus, the only issue left for this Court to decide is the appropriate sanction to be imposed. On review of the entire record and under all the circumstances, we find that the sanction to be imposed should be coextensive with that directed by the

Southern District of New York. In doing so, we are mindful of the fact that as a general rule in reciprocal disciplinary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (*see Matter of Jaffe*, 78 AD3d 152, 158 [1st Dept 2010]; *Matter of Jarblum*, 51 AD3d 68 [1st Dept 2008]). We have also provided that a sanction commence with the date an attorney voluntarily ceased to practice law (*e.g. Matter of Kahn*, 76 AD3d 266 [1st Dept 2010]). Reportedly, respondent has not practiced law since early 2010, which constitutes a significant period of the time that has transpired since the date of the Southern District's April 8, 2008 interim suspension order.

Finally, because respondent will be obliged to file a petition for reinstatement to resume the practice of law in this state (22 NYCRR 603.14), we decline respondent's request for automatic reinstatement.

Accordingly, the Committee's motion should be granted to the extent of suspending respondent from the practice of law for a period of five years nunc pro tunc to April 10, 2010, and until the further order of this Court.

TOM, J.P., RENWICK, ANDRIAS, DEGRASSE and KAPNICK, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of five years, nunc pro tunc to April 10, 2010, and until further order of this Court.