[49 NYS3d 684]

In the Matter of MARK D. BOGARD (Admitted as MARK DARYL BOGARD), an Attorney, Respondent. ATTORNEY GRIEVANCE COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 21, 2017

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Attorney, Attorney Grievance Committee,* New York City (*Kevin P. Culley* of counsel), for petitioner.

## OPINION OF THE COURT

Per Curiam.

Respondent Mark D. Bogard was admitted to the practice of law in the State of New York by the Third Judicial Department on June 23, 2009, under the name Mark Daryl Bogard. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

By motion dated November 21, 2016, the Attorney Grievance Committee (Committee) moves, pursuant to Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13 (a) and (b), for an order finding that respondent has been disciplined by a foreign jurisdiction and directing him to demonstrate why discipline should not be imposed in New York for the underlying professional misconduct. The Committee properly served its petition on respondent, pro se, and by way of a December 21, 2016 email, respondent confirmed that he does not intend to submit a response.

By order filed November 20, 2014 (220 NJ 44, 102 A3d 380 [2014]), the Supreme Court of New Jersey reprimanded respondent for, inter alia, gross neglect of a foreclosure matter, which resulted in his clients' house being sold at a sheriff's sale. A New Jersey District Ethics Committee (DEC) charged respondent with violating New Jersey Rules of Professional Conduct (RPC) rules 1.1 (a) (gross neglect), 1.3 (lack of diligence), 1.4 (b) and (c) (failure to communicate), and 5.1 (b) and 5.3 (a) and (b) (failure to properly supervise). The charges arose from respondent's representation of a husband and wife (the complainants), who retained his law firm (the firm), to represent them in connection with a loan modification and a foreclosure matter.

In March 2010, the complainants retained the firm to help them obtain a loan modification in hopes of lowering the mortgage payments for their home in New Jersey, which was in arrears. At the DEC hearing, respondent testified that he executed the firm's retainer agreement with the complainants because he was physically present in the firm's New York office when they came in; but he was not specifically assigned to their loan modification, which was handled by the staff in the main office in Florida over whom he had no supervisory authority.

The complainants' loan modification was not completed for various reasons. The DEC found that the firm appeared to

have mishandled the loan modification, but it found no professional misconduct on respondent's part because he had no control over the Florida staff that was handling the matter.

In July 2012, a final judgment of foreclosure was entered against the complainants. On August 31, 2012, the complainants met with respondent to discuss the loan modification and informed him that a sheriff's sale had been scheduled for September 12, 2012. On or about September 4, 2012, the complainants executed a second retainer agreement with the firm to represent them in the foreclosure matter for which they paid an additional fee of $2,135.

Respondent admitted that it was his responsibility to stop the sheriff's sale. However, he took no action on the matter until September 11, 2012, the day before the sale, when he purportedly called the Union County Sheriff's Office and was informed that only the homeowners could apply for an adjournment of the sale, and not even his personal appearance as their attorney would suffice. Respondent admitted that he did not ask to speak to a supervisor or to the Union County Sheriff, nor did he submit anything in writing to the sheriff's office. Respondent did not memorialize this purported telephone conversation. Neither respondent nor anyone from the firm attended the sale because the sheriff's office purportedly told respondent that it would not help.

Respondent's hearing testimony was contradicted by a representative from the Union County Sheriff's Office who testified that a homeowner's attorney could request an adjournment of a sale by submitting either a retainer agreement or written instructions from the homeowner authorizing the attorney to request an adjournment, and that two-week adjournments were routinely granted.*

Respondent testified that the day prior to the sale, he tried to reach the complainants at three different telephone numbers to no avail. He also sent his client an email informing her that she had to go in person to the sheriff's sale the next day in order to stop it. In his email, respondent stated that by waiting to the last minute to request an adjournment, the client would maximize her time to delay the sale. Notably, the Disciplinary Review Board (DRB) found that the email seemed more designed to diminish the impact of respondent's failure to act in a timely manner rather than to give advice to his client.

---

* The Union County Sheriff's website confirmed that two-week adjournments could be obtained.

Unbeknownst to respondent, the complainants were on vacation in Mexico. Upon receipt of the email, the client tried to call him on his direct line, but he neither answered nor returned her calls. She admitted that she never gave respondent advance notice of their vacation, but stated that she tried to call him approximately six times before she left. She also purportedly tried to call the firm's Florida office to inquire about the status of the sheriff's sale and whether it was all right to leave for vacation. Respondent did not reply to the complainant's messages.

As no one appeared at the sheriff's sale on the complainants' behalf their house was sold. On September 14, 2012, after he learned of the sale, respondent called the complainants' daughter, who was their emergency contact, and left her a message stating that he would be in contact once he had more information about the sale. Respondent learned that day that the complainants had 10 days to redeem their property.

When the complainant returned from vacation, she tried to call respondent to no avail. She then went to the sheriff's office and learned that no one had entered an appearance on her behalf. On September 19, 2012, respondent informed her about the sale and told her that her only options were to redeem the property or wait to be evicted.

The DEC found that respondent should have made more of an effort to stop the sheriff's sale. Specifically, it concluded that he should have: (1) insisted on speaking with a supervisor or even the sheriff himself to explain that he was not familiar with the type of procedure they employed; (2) informed the person with whom he spoke that he was authorized by the terms of his firm's retainer agreement with the complainants to take all necessary legal steps to represent their interests; (3) submitted a fax or email to plead his clients' case for an adjournment of the sale; or (4) appeared at the sale to try to stop it.

The DEC concluded that by failing to take any of the above steps, respondent had violated New Jersey RPC rules 1.1 (a) (gross negligence) and 1.3 (lack of diligence). The DEC rejected respondent's asserted defense of "impossibility" based on the complainants' failure to inform him of their planned vacation because it was respondent's admitted responsibility to stop the sheriff's sale; and he failed to ascertain, prior to his clients' vacation, whether they had to be available. As to sanction, the DEC noted that respondent had no prior disciplinary history

and there were no aggravating factors, and it recommended a reprimand.

The DRB confirmed the DEC's finding that the charges related to the loan modification (RPC rules 1.1 [a]; 1.3, 1.4, 5.1 [b]; 5.3) should not be sustained since there was no evidence that respondent supervised the staff handling the process. It also agreed with the DEC's finding that respondent did commit professional misconduct in the foreclosure matter, "find[ing] that his failure to take even minimally appropriate action with regard to the sheriff's sale amounted to gross neglect and lack of diligence" in violation of RPC rules 1.1 (a) and 1.3. Finally, the DRB also found that respondent's failure to return the calls his client made to him before and after her vacation constituted failure to communicate in violation of RPC rule 1.4 (b).

As to sanction, the DRB noted that the misconduct at issue, gross neglect, lack of diligence and failure to communicate with clients, ordinarily resulted in either an admonition or a reprimand, depending on, inter alia, the harm to the clients. Given the significant harm to the complainants, namely, the sale of their house, the DRB agreed with the DEC that a reprimand was warranted. By order filed November 20, 2014 (220 NJ 44, 102 A3d 380 [2014]), the New Jersey Supreme Court agreed with the DRB and reprimanded respondent for his misconduct.

As stated above the Committee requests that, pursuant to 22 NYCRR 1240.13 (a) and (b), this Court find respondent has been disciplined by a foreign jurisdiction and order him to demonstrate why discipline should not be imposed based on his discipline in New Jersey.

The only defenses to reciprocal discipline are enumerated at 22 NYCRR 1240.13 (b), to wit: a lack of notice and opportunity to be heard in the foreign jurisdiction; an infirmity of proof establishing the misconduct; or the misconduct at issue in the foreign jurisdiction would not constitute misconduct in New York (*Matter of Hoffman*, 34 AD3d 1 [1st Dept 2006]).

Even though respondent has not asserted a defense under 22 NYCRR 1240.13 (b), none apply. Respondent received notice of the charges against him, testified at the DEC hearing, and waived his right to appear before the DRB for oral argument (*see* 22 NYCRR 1240.13 [b] [1]). In addition, the record, which includes respondent's admissions, amply supports the DRB's and the New Jersey Supreme Court's misconduct findings (*see* 22 NYCRR 1240.13 [b] [2]). Lastly, respondent's misconduct in

New Jersey would also violate the New York Rules of Professional Conduct (22 NYCRR 1200.0), namely, rules 1.3 (a), 1.3 (b) and 1.4 (a) (*see* 22 NYCRR 1240.13 [b] [3]).

As a general rule, in reciprocal disciplinary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (*see Matter of Peters*, 127 AD3d 103, 109 [1st Dept 2015]; *Matter of Cardillo*, 123 AD3d 147, 150 [1st Dept 2014]; *Matter of Jaffe*, 78 AD3d 152, 158 [1st Dept 2010]).

In this matter, a public censure, the equivalent of a reprimand in New Jersey, is in accord with this Court's precedent involving similar misconduct (*see e.g. Matter of Dwyer*, 142 AD3d 88 [1st Dept 2016]; *Matter of Weichsel*, 135 AD3d 156 [1st Dept 2015]; *Matter of Finkelstein*, 118 AD3d 51 [1st Dept 2014]).

Accordingly, the Committee's petition for reciprocal discipline should be granted, and respondent is censured pursuant to 22 NYCRR 1240.13.

ACOSTA, J.P., MAZZARELLI, MANZANET-DANIELS, WEBBER and GESMER, JJ., concur.

Respondent publicly censured.