Matter of Sison (2018 NY Slip Op 02282)





Matter of Sison


2018 NY Slip Op 02282


Decided on March 29, 2018


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 29, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

 Rosalyn H. Richter, Justice Presiding, Barbara R. Kapnick, Troy K. Webber,Jeffery K. Oing, Anil C. Singh, Justices.


M-5282

[*1]In the Matter of Victor G. Sison, (admitted as Victor Garcia Sison), an attorney and counselo-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Victor G. Sison, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Victor G. Sison, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 1, 1993.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Sean A. Brandveen, of counsel), for petitioner.
Respondent pro se.



PER CURIAM


Respondent Victor G. Sison was admitted to the practice of law in the State of New York by the First Judicial Department on February 1, 1993, under the name Victor Garcia Sison. [*2]Respondent maintains a registered address in New Jersey where he is admitted to practice.
Now, the Attorney Grievance Committee (Committee) seeks an order, pursuant to Judiciary Law § 90(2) and the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13 and the doctrine of reciprocal discipline, disciplining respondent predicated upon discipline imposed by the Supreme Court of New Jersey, and directing him to demonstrate why discipline should not be imposed for the underlying misconduct, or, in the alternative, sanctioning respondent as this Court deems appropriate under the circumstances.
Respondent was suspended for three months in New Jersey based upon misconduct committed while he was a part-time Municipal Court Judge in Jersey City (2004-2007) during which time he submitted parking and traffic tickets issued to him and members of his family to his judicial colleagues for improper adjudication.
Respondent stipulated to facts relating to his involvement
in ticket fixing. In 2005, respondent received a ticket for debris left at his law office in Jersey City. Respondent knew that he could not dismiss or adjudicate his own ticket so he brought it to his supervising judge. Respondent represented to New Jersey disciplinary authorities that the perception in the Jersey City Municipal Court was that you could not dismiss your own ticket but you could give it to another judge. The Judge adjudicated the ticket in chambers and respondent paid a $50 fine and $20 court costs. Respondent considered this adjudication to be a "test run" and assumed that other tickets could be handled in similar fashion.
Respondent also presented parking tickets issued to him and his wife to his colleague (who shared law office space with respondent, did per diem work for him for which they were paid, and was listed as "of counsel"). The colleague adjudicated the matters, finding respondent and his wife guilty, waiving the $42 fine for both tickets, and imposing $30 in court costs notwithstanding that neither respondent nor his wife formally appeared in court, nor had they pled guilty by mail as provided for in the court rules. The $30 in assessed costs was paid to the court.
Respondent also submitted a traffic ticket issued to his son in 2004 for failure to observe a traffic control device, a moving violation, to this same colleague who amended the ticket to delaying traffic, a no-point violation, and imposed a $25 fine and $25 in court costs. Respondent's son was found guilty of the amended offense notwithstanding he never formally appeared in the courtroom, but was standing outside in the hallway, and did not enter a guilty plea in a manner prescribed by the court rules. Further, no factual basis for the amended charge was placed on the record and neither the municipal prosecutor nor the police officer who issued the ticket were given notice or opportunity to be heard on the matter. The $50 fine was paid to the court.
In 2007, in response to rumors of improper ticket handling respondent asked an administrative clerk about vacating the tickets adjudicated. Respondent asserted that he was prepared to pay the maximum fine for each of the tickets but the clerk informed him that a ticket could not be vacated once it was entered "in the system." At or around this time, respondent and others became the subjects of investigations conducted by the court system and the New Jersey Attorney General's Office.
On October 3, 2007, respondent voluntarily took an unpaid leave of absence from his judicial position. Thereafter, on or about October 7, 2007, respondent was criminally charged with official misconduct in violation of New Jersey Statutes Annotated 2C:30-2(a). On August 28, 2009, the court granted respondent's application for admission to New Jersey's Pre-Trial Intervention (PTI) program for a period of two years as a condition of which he admitted to his mishandling the traffic tickets at issue and agreed never to hold judicial office again in the future. Respondent successfully completed the PTI program and the charge against him was dismissed.
In 2014, the New Jersey Office of Attorney Ethics (OAE) filed a formal disciplinary complaint against respondent charging him with violations of New Jersey Rules of Professional Conduct (NJRPC) 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, specifically, official misconduct [*3]under NJ Stat Ann 2C:30-2[a]) and NJRPC 8.4(d) (conduct that is prejudicial to the administration of justice). Respondent, represented by counsel, admitted the material facts alleged by the OAE and admitted the NJRPC 8.4(d) charge.
In July 2015, following a hearing on the NJRPC 8.4(b) charge and appropriate sanction to impose, a District Ethics Committee (DEC) issued a report in which it sustained both of the alleged disciplinary violations and recommended respondent be suspended for three months, one month of which should be suspended.
In mitigation, the DEC considered respondent's past accomplishments (which included his prior career as a Roman Catholic priest), his pro bono and civic work for the Filipino community, his character evidence, the fact that seven years had passed since respondent was first served with the OAE's grievance against him, he cooperated with law enforcement and the OAE, he had no prior disciplinary history, and his sincere remorse.
Following a de novo review, the Disciplinary Review Board (DRB) affirmed the DEC's misconduct findings. As to sanction, the DRB voted 7-1 to affirm the DEC's recommendation of a three-month suspension but did not recommend that any portion thereof be suspended. The DRB found that respondent's testimony before the DEC at times lacked credibility. In addition, the DRB fully credited the DEC's mitigation findings.
By order of November 17, 2016, the New Jersey Supreme Court adopted the DRB's decision, found respondent guilty of violating NJRPC's 8.4(b) and 8.4(d), and suspended him for three months, effective December 16, 2016. By letter dated December 1, 2016, respondent advised the Committee of his discipline in New Jersey, as required by 22 NYCRR 1240.13(d). On March 30, 2017, respondent was reinstated in New Jersey.
As stated above the Committee requests that, pursuant to 22 NYCRR 1240.13(a) and (b), this Court find respondent has been disciplined by a foreign jurisdiction and order him to demonstrate why discipline should not be imposed based on his discipline in New Jersey, or, in the alternative, impose such sanction as this Court deems appropriate.
The Committee argues that a reciprocal three-month suspension would be appropriate herein. Additionally the Committee suggests that given respondent promptly notified the Committee of his discipline in New Jersey and has been reinstated in that state, retroactive reciprocal discipline may be warranted.
Respondent, pro se, who is 74 years old, does not oppose the imposition of reciprocal discipline but requests it be limited to a three-month suspension retroactive to the effective date of his suspension in New Jersey (December 16, 2016). Respondent cites to the fact that the U.S. District Court for the District of New Jersey, by order of March 31, 2017, imposed a reciprocal three-month suspension retroactive to the effective date of his New Jersey discipline. The federal court reinstated respondent on May 4, 2017.
In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 1240.13, respondent may raise the following defenses: (1) a lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; or (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in New York.
As noted, respondent does not object to the imposition of reciprocal discipline and the record shows that he was provided with sufficient notice and an opportunity to be heard in the New Jersey disciplinary proceeding, and the findings of misconduct were supported by the record. Further, the misconduct for which respondent was disciplined in New Jersey would constitute misconduct in this state in violation of New York Code of Professional Responsibility DR 1-102(a)(3) (22 NYCRR 1200.3 [a][3]) (illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer) and DR 1-102(a)(5) (22 NYCRR 1200.3 [a][5]) (conduct prejudicial to the administration of justice).
As a general rule in reciprocal disciplinary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (see Matter of Peters, 127 AD3d 103, 109 [1st Dept 2015]; Matter of Cardillo, 123 AD3d 147, 150 [1st Dept [*4]2014]). Only in rare instances will this Court depart from its general rule (see Matter of Kim, 138 AD3d 8, 11 [1st Dept 2016]; Matter of Lowell, 14 AD3d 41, 48 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]).
Here, the New Jersey Supreme Court imposed a three-month suspension which is in general accord with New York precedent involving arguably similar misconduct (see e.g. Matter of Teague, 131 AD3d 268 [1st Dept 2015], appeal dismissed 26 NY3d 959 [2015], lv denied 26 NY3d 912 [2015]; Matter of Williams, 33 AD3d 38 [1st Dept 2006], lv dismissed in part, denied in part 8 NY3d 858 [2007], appeal dismissed 8 NY3d 1007 [2007], cert denied 553 US 1018 [2008]).
Accordingly, the Committee's motion should be granted to the extent of imposing reciprocal discipline pursuant to 22 NYCRR 1240.13, and suspending respondent from the practice of law in the State of New York for a period of three months.
All concur.
Order filed. [March 29, 2018]
Petition is granted to the extent of imposing reciprocal discipline pursuant to 22 NYCRR 1240.13, respondent is suspended from the practice of law in the State of New York for a period of three months, effective April 30, 2018, and until further order of this Court.