Matter of Kachroo (2020 NY Slip Op 00254)





Matter of Kachroo


2020 NY Slip Op 00254


Decided on January 14, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 14, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. David Friedman, Justice Presiding,
Barbara R. Kapnick
Angela M. Mazzarelli
Jeffrey K. Oing
Anil C. Singh,Justices.


M-2263

[*1]In the Matter of Gaytri D. Kachroo, (admitted as Gaytri Devi Kachroo), an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Gaytri D. Kachroo, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Gaytri D. Kachroo, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 4, 2002.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Yvette A. Rosario, of counsel), for petitioner.
Respondent pro se.



PER CURIAM


Respondent Gaytri D. Kachroo was admitted to the practice of law in the State of New York by the First Judicial Department on February 4, 2002, under the name Gaytri Devi Kachroo. At all times relevant to this proceeding, respondent maintained a registered address in Massachusetts, where she was admitted to practice and resides.
The Attorney Grievance Committee (AGC) now seeks an order, pursuant to Judiciary Law § 90(2) and New York's Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13, imposing reciprocal discipline on respondent, predicated on an order of the Supreme Judicial Court of the Commonwealth of Massachusetts dated October 26, 2018, accepting respondent's resignation from that state's bar as a disciplinary sanction and ordering her name stricken from the roll of attorneys.
The Massachusetts Board of Bar Overseers (BBO) filed a statement of disciplinary charges alleging that respondent had committed various acts of professional misconduct, including negligent (i.e., non-venal) misappropriation of client funds and failure to maintain required escrow account records. Specifically, the statement asserted that, between October 2012 and February 2015, respondent billed a client, a wealthy London resident formerly married to a billionaire hedge fund financier, over $1.4 million for respondent's non-legal investigative services, including an investigation of the ex-husband's alleged market abuse and other alleged financial misconduct. The fee was excessive because the investigation produced no benefit to the client, and respondent billed at her regular rate of $700 per hour for 150 hours of a paralegal's work, and for respondent's time responding to 4,000 text messages from the client that were not material to the representation, and which totaled approximately $300,000 in violation of the Massachusetts Rules of Professional Conduct (Mass. R. Prof. C.)1.5(a) (prohibition against charging and/or collecting an excessive legal fee).
The statement further averred that, between December 1, 2012 and July 31, 2013, respondent, who periodically received retainer payments from the client, withdrew from her escrow account $170,236.57 more toward the client's fees than had been deposited, in violation of Mass. R. Prof. C. 1.15(b) and 1.15(c) (negligent misuse of client funds). In September 2013, respondent facilitated a financial investment by the same client in a pharmaceutical company in which respondent was an executive and board member, but respondent failed to disclose that a portion of the client's investment funds might be used to pay respondent's compensation as a board member and that respondent's representation could be materially limited by her personal interests, constituting a conflict of interest in violation of Mass. R. Prof. C. 1.7(b) and 1.8(a)(l) (entering into business transaction with client without obtaining adequate informed consent in writing from client as to conflict of interest).
The statement additionally focused on respondent's representation, beginning in 2011, of multiple clients in federal court litigation related to a massive Ponzi investment scheme by Stanford International Bank, Ltd. Respondent's fee agreements with those clients provided for an excessive contingent fee of the awards received by the clients (for respondent merely filing out a two-page claim form), in violation of Mass. R. Prof. C. 1.5(a). As to some of these clients, respondent also failed to maintain adequate individual client ledgers, failed to credit retainers paid, and negligently debited from her escrow account amounts in excess of the retainers then on deposit (after the retainers had been exhausted), thereby misusing the funds of other clients in violation of Mass. R. Prof. C. 1.15(b) and 1.15(c). The statement acknowledged, however, that none of these clients was deprived of any funds.
The statement further outlined how, in 2015, respondent executed a settlement agreement of a fee dispute with a former client which contained an explicit provision that, as a condition of settlement, the former client was prohibited from filing a complaint with bar counsel. Both parties were represented by counsel but, in executing a clause in a settlement agreement requiring a party to refrain from filing a complaint with bar counsel, respondent violated Mass. R. Prof. C. 8.4(g) (failure without good cause to cooperate with disciplinary authorities), 8.4(h) (other [*2]conduct that adversely reflects on fitness as a lawyer), and MA S.J.C. Rule 4:01 § 10 (improperly conditioning settlement on not filing disciplinary complaint).
Finally, the statement alleged that, from December 2012 until September 2017, respondent maintained an IOLTA account for which she failed to keep: (1) required records, namely, timely or contemporaneous individual client ledgers reporting each receipt of funds, the dates thereof, and the amounts; (2) a ledger of bank fees and charges; and (3) a prompt or contemporaneous record in check register or clients ledgers of receipts and disbursements on behalf of clients, which resulted in inaccurate and unbalanced three-way reconciliations in violation of Mass. R. Prof. C. 1.15(f)(1)(B)-(E) (failure to maintain required bookkeeping records).
In response to the statement of charges, respondent, represented by counsel, tendered an affidavit in which she stated that she desired to resign from the practice of law in Massachusetts as a disciplinary sanction for the misconduct set forth by the BBO, waived her right to a hearing, and agreed not to contest the facts underlying the charges, the rule violations charged therein, nor the resulting discipline in Massachusetts or "in any other jurisdiction." The Massachusetts Office of Bar Counsel and the BBO recommended that respondent's resignation be accepted and, by order entered October 26, 2018, the Supreme Judicial Court of Massachusetts accepted respondent's affidavit of resignation as a disciplinary sanction and her name was stricken from the roll of attorneys.
As noted, the AGC now seeks an order, pursuant to the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction, directing her to demonstrate why she should not be reciprocally disbarred, or, in the alternative, subject to a sanction this Court deems appropriate, based on her discipline in Massachusetts.
In a proceeding seeking reciprocal discipline pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13, the respondent is precluded from raising any defenses except: (1) lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; (2) an infirmity of proof establishing the misconduct presented to the foreign jurisdiction; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this State. There is no question that the first two prongs were satisfied, because respondent knew about the charges and affirmatively chose not to contest them. As for the third prong, we find that the misconduct in Massachusetts would constitute misconduct in New York in violation of the Rules of Professional Conduct (22 NYCRR) rules 1.5(a), 1.8(a), 1.15(a), 1.15(d), 8.4(d), and 8.4(h). Thus, the only issue left for resolution is the appropriate sanction to impose.
The AGC argues that while this Court has imposed sanctions ranging from censure to disbarment for misconduct comparable to that committed by respondent in Massachusetts, it has, with very few exceptions, imposed the equivalent sanction to that imposed by the foreign jurisdiction. Therefore, the AGC posits, respondent should be disbarred in New York commensurate with her discipline in Massachusetts. Alternatively, the AGC requests that this Court sanction respondent as it deems appropriate under the circumstances.
Respondent opposes the imposition of reciprocal discipline, emphasizing that her discipline in Massachusetts was the result of settlement. She asserts that many of the charges would not necessarily have been provable, and that, had the matter been litigated, any discipline would not have been greater than an admonition or censure for inadequate record keeping which would have allowed her to continue to practice law. She further claims that the Massachusetts disciplinary proceeding was largely the result of complaints from dissident shareholders in the pharmaceutical company in which she was an executive/shareholder, the goal of which was to gain advantage in a federal lawsuit they brought against her, which was ultimately dismissed with prejudice at the election of the plaintiff and without any finding of wrongdoing on her part.
Respondent also outlines certain mitigating circumstances. She claims that she spent over a year responding to the Massachusetts Bar Counsel's "dense requests for information on an almost monthly basis" which, in conjunction with the closing of her law practice and an IRS [*3]audit, reawakened traumatic childhood memories of the India-Pakistan War and, while she submits no medical evidence, caused her to develop post-traumatic stress disorder. Additionally, during the period at issue, respondent was in a state of grief and shock because her mother (for whom she was the primary caretaker) succumbed to brain cancer and passed away, and three weeks later her ex-husband suddenly died.
Regarding respondent's substantive defenses, they are irrelevant in a reciprocal disciplinary proceeding, as noted above. Further, as a general rule, in reciprocal disciplinary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (see Matter of Peters, 127 AD3d 103, 108-109 [1st Dept 2015]; Matter of Cardillo, 123 AD3d 147, 150 [1st Dept 2014]; Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]).
While this Court has imposed reciprocal discipline in the form of disbarment based on disciplinary resignations in other jurisdictions, including Massachusetts (see e.g. Matter of Frank, 113 AD3d 92 [1st Dept 2013]; Matter of Simons, 34 AD3d 136 [1st Dept 2006]; Matter of Murphy, 276 AD2d 121 [1st Dept 2006]), it need not do so. Indeed, in Matter of McHallam (160 AD3d 89 [1st Dept 2018]), where the respondent neglected an appeal resulting in its dismissal and then lied to the client about the status of the case, this Court determined not to disbar the respondent, even though the Massachusetts court had accepted the respondent's disciplinary resignation. In imposing reciprocal discipline, this Court found that a three-month suspension, rather than disbarment, was in general accord with this Court's precedent for comparable misconduct, particularly given the respondent's lack of prior discipline, aggravation or venal intent.
Turning to the allegations here, disbarment is not a sanction that would ordinarily be imposed under the circumstances. This Court has imposed sanctions ranging from public censure to suspensions of varying length for misconduct of the same general nature as that at issue here (see e.g. Matter of Peskin, 173 AD3d 47 [1st Dept 2019]; Matter of Teichberg, 121 AD3d 319 [1st Dept 2014]; Matter of Novins, 119 AD3d 37 [1st Dept 2014]; Matter of Edelman, 86 AD3d 96 [1st Dept 2011]; Matter of Fong, 308 AD2d 19 [1st Dept 2003]).
Notwithstanding respondent's decision to resign as a disciplinary sanction in Massachusetts, we find that, under all of the circumstances, including respondent's mitigation evidence, a suspension of three years is the appropriate sanction.
Accordingly, the Committee's petition for reciprocal discipline should be granted, and respondent suspended from the practice of law for a period of three years, and until further order of this Court.
All concur.
Order filed. [January 14, 2020]
The Committee's motion for reciprocal discipline is granted and respondent is suspended from the practice of law for a period of three years, effective February 14, 2020, and until further order of this Court.