Matter of Gell (2020 NY Slip Op 07711)





Matter of Gell


2020 NY Slip Op 07711


Decided on December 22, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 22, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta,P.J.,
Dianne T. Renwick
Angela M. Mazzarelli
Tanya R. Kennedy
Saliann Scarpulla, JJ.


Motion No. 2020-02821 Case No. 2020-03611 

[*1]In the Matter of Amy L. Nussbaum Gell (admitted as Amy Lauren Nussbaum) an attorney and counselor-at law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Amy L. Nussbaum Gell (O.C.A. attorney registration No. 2168730) Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on December 7, 1987.




Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Jun H. Lee, of counsel), for petitioner.
Hal R. Lieberman, Esq., for respondent.



Per Curiam 


Respondent Amy L. Nussbaum Gell was admitted to the practice of law in the State of New York by the First Judicial Department on December 7, 1987 under the name Amy Lauren Nussbaum. At all relevant times, respondent maintained an office for the practice of law within the First Judicial Department.
The Attorney Grievance Committee (AGC) now seeks an order pursuant to Judiciary Law § 90(2), the Rules for Attorney Disciplinary Matters (22 NYCRR) §1240.13, and the doctrine of reciprocal discipline, disciplining respondent predicated upon discipline imposed by the United States Court of Appeals for the Second Circuit, directing her to demonstrate to this Court why discipline should not be imposed for the underlying misconduct, and sanctioning respondent as this Court deems appropriate.
By order entered December 7, 2010, the United States Court of Appeals for the Second Circuit publicly reprimanded respondent for her repeated failure to comply with that court's scheduling orders, causing her to default on 28 of 41 petitions she had submitted for review between 2005 and 2007 and leading to dismissal of some of the appeals. Based upon that order, this Court, on February 28, 2012, imposed reciprocal discipline on respondent in the form of a public censure (Matter of Gell, 94 AD3d 116 [1st Dept 2012]).
Thereafter, in 2017, a grievance panel for the Second Circuit directed respondent to show cause why disciplinary or other corrective measures should not be imposed based on her apparent continued pattern of defaults, specifically in 41 cases that were pending, with one exception, between 2013 and July 2017. Respondent represented in her response to the order to show cause that all future filings would be timely. Nevertheless, in February 2019, the Second Circuit referred respondent to the court's Committee on Admissions and Grievances (CAG) for investigation and report, noting that, notwithstanding her assurances, she or her firm had recently defaulted in their filing of another appeal, resulting in its dismissal, and had been untimely with respect to several other filings.
On October 29, 2019, the CAG conducted a hearing at which respondent and two character witnesses testified. At the conclusion of the hearing, respondent advised the panel that she would be requesting leave to voluntarily withdraw from the Second Circuit bar and that she would voluntarily undertake, at her own expense, a two-year monitoring period by a third party. On April 21, 2020, the CAG issued its report, which concluded that there was clear and convincing evidence that respondent had engaged in a "pattern of misconduct" based primarily on her failure to timely file required documentation in more than 40 proceedings, resulting in six appeals being dismissed. The panel recommended a public reprimand and that respondent be permitted to voluntarily withdraw from the Second Circuit [*2]bar.
In its ensuing report, the CAG first noted that the court's 2019 referral order identified a pattern of untimely filings in the 41 cases it cited in its 2017 order to show cause in which respondent is, or was, counsel of record, the 14 additional cases in which she had defaulted since the 2017 order to show cause, as well as six immigration agency proceedings cited in the 2019 referral order where respondent's personal involvement in the administrative proceedings was unclear. The CAG noted that respondent "largely took responsibility for her defaults" and expressed "deep remorse . . . for the case management problems" she described; however, while respondent proffered various explanations, including unresponsive or uncooperative clients, miscalculated deadlines, calendaring mistakes, technology issues and that she had been sick, the CAG found that she had failed to comply with deadlines for filing appeal briefs in 31 cases; and that on over 40 other occasions she had failed to file paperwork in a timely fashion. The court found these failures to comply to constitute violation of New York Rules of Professional Conduct (RPC)(22 NYCRR 1200.0) rules 1.3(b)(neglect of a legal matter), 8.4(d) (conduct prejudicial to the administration of justice) and 8.4(h) (conduct that adversely reflects on the lawyer's fitness as a lawyer).
The CAG noted that the court's referral order had also identified six cases before the immigration agency which may have evidenced respondent's inability to meet her obligations to the court in the future. The CAG credited her assertion that in four of the matters she had not represented the clients personally but, nevertheless found that as a partner of the firm she was responsible as a supervisor, citing RPC rules 5.1(b)(1) and 5.1(d)(2). With respect to the two other cases, the CAG concluded that her explanations of lateness did not excuse her conduct and, overall, her conduct before the immigration agency "is relevant because it indicates that her misconduct in the Second Circuit is part of a wider pattern of misconduct."
Respondent admitted to most of the misconduct, and the CAG noted that she expressed "credible remorse," fully cooperated "including by offering suggestions to the Committee after the Hearing on how to structure an effective monitoring period," expressed "a genuine commitment to her clients" and evidence of the lack of a selfish motive, "took some good faith steps to prevent tardiness by agreeing to limit her caseload, improving her firm's technology, and hiring a business consultant," revealed certain medical issues that occurred during the period covered by the court's referral order and "perhaps most significantly . . . appears to be an effective lawyer in immigration court and well regarded in the legal immigration community." Both retired immigration judges who testified on respondent's behalf described her skill and dedication to her clients and explained that she took on too much work, [*3]often because she had trouble saying "no" to clients.
The CAG found several aggravating factors, to wit: 1) an established pattern of misconduct and multiple offenses over time; 2) sufficient experience such that respondent should have recognized and addressed the problems sooner; 3) the particular vulnerability of respondent's immigration clients; 4) the fact that six cases were dismissed due to respondent's conduct; and 5) respondent's disciplinary history — a 2004 Admonition from this Court's Grievance Committee based on her having missed a hearing that resulted in a deportation order for her client, and the 2010 reprimand by the Second Circuit (that led to this Court's 2012 reciprocal censure).
Although the CAG was "troubled" by respondent's misconduct, it placed "great weight on the character references and especially the particularly strong testimony of the retired immigration judges personally familiar" with respondent and, therefore, determined that a public reprimand was the appropriate sanction. The CAG noted further that, after the hearing, respondent expressed a desire "to focus exclusively on her practice before the immigration court and asked that she be permitted to resign from the Second Circuit's bar," which the CAG recommended be granted.
By Summary Order entered May 29, 2020, the Grievance Panel for the Second Circuit adopted the CAG's findings and recommendations "as supplemented" by the court's discussion therein, expressly accepting the CAG's credibility determinations and factual findings. The court did not disagree with the recommended disposition of public reprimand, but noted that the misconduct would ordinarily warrant a period of suspension, especially when considered in the context of the previous reprimand for similar misconduct. Nevertheless, the court stressed the mitigating factors, especially respondent's decision to request voluntary withdrawal from the Second Circuit bar. Contrasting this offer with its frequent use as "an attempted evasive maneuver" the court viewed the request as a genuine remedial measure. The court also gave weight to the character and fitness testimony provided by the two retired immigration judges, which the CAG found 'unusually compelling' and 'particularly strong.' The court stated that it was rendering no opinion about respondent's conduct before the immigration agency; instead it was basing its sanction only on her misconduct in that court.
In a proceeding seeking reciprocal discipline, the respondent is precluded from raising any defense enumerated in 22 NYCRR 1240.13, except, (1) a lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state. Respondent does not raise any such defenses. Thus, we must only determine the appropriate sanction[*4].
Generally, this Court accords significant weight to the discipline imposed by the jurisdiction where the charges were initially filed (Matter of Peters, 127 AD3d 103, 109 [1st Dept 2015]; Matter of Cardillo, 123 AD3d 147, 150 [1st Dept 2014]; Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]). However, where appropriate, this Court has departed from that practice, albeit infrequently (see e.g. Matter of Lowell, 14 AD3d 41 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]). The AGC does not explicitly argue for a departure from the predicate sanction, but it does note respondent's prior public discipline for similar misconduct and specifically cites to, inter alia, Matter of Salomon (91 AD3d 187 [1st Dept 2011]) where this Court deemed a three-month suspension imposed by the Second Circuit for neglect of immigration matters over several years (e.g. dismissal of 125 petitions for review) insufficient and instead imposed a six-month suspension where the attorney had previously been censured for similar misconduct and lacked candor, the Executive Office for Immigration Review had issued a reciprocal six-month suspension based on the Second Circuit order, and it was found that the purported improvements in case management system was not a significant mitigating factor given the respondent's default on several matters during the federal disciplinary proceeding.
Respondent does not oppose the imposition of reciprocal discipline but urges that the sanction be no greater than a public censure, pointing to the Second Circuit's having declined to follow the CAG's finding that her conduct was part of a "wider pattern" that included the immigration courts when it made it clear that its reprimand was based solely upon her conduct before the Second Circuit, as well as the mitigating factors upon which that court relied.
The Second Circuit's imposition of a public reprimand is in accord with cases in this Department where attorneys were censured for neglecting client matters, some including immigration matters, and where there was mitigation and a disciplinary history (see e.g. Matter of Salomon, 78 AD3d 115 [1st Dept 2010]; Matter of Weiner, 10 AD3d 92 [1st Dept. 2004]; Matter of Lenoir, 287 AD2d 243 [1st Dept 2001]). Respondent's resignation from the Second Circuit bar and her decision to focus her practice before the immigration courts, confirm that censure is an appropriate sanction, conditioned on respondent's participation in a two-year monitoring program with a third party, which she has already committed to doing.
Finally, we find it appropriate that the CAG report, which contains medical and personal information about respondent, in addition to other documents in the file that contain such information, should remain confidential.
Accordingly, the Committee's motion for reciprocal discipline should be granted and respondent is censured and is directed to participate in a two-year monitoring program with a third party[*5]. The CAG report and other documents in the file containing medical and personal information is to remain confidential.
All concur.
It is Ordered that the Committee's motion for reciprocal discipline pursuant to 22 NYCRR 1240.13 is granted. Respondent is censured and directed to participate in a two-year monitoring program with a third party, and,
It is further Ordered that the Second Circuit Committee on Admissions and
Grievances' report and other documents in the file containing medical and personal information is to remain confidential.
Entered:[December 22, 2020]